In the Matter of SCHENECTADY CHEMICALS, INC., Appellant, v ROBERT F. FLACKE, as Commissioner of the New York State Department of Environmental Conservation, et al., Respondents.

Third Department, December 23, 1981

APPEARANCES OF COUNSEL

*Higgins, Roberts, Beyerl & Coan, P.C. (William P. Willig* of counsel), for appellant.

*Robert Abrams, Attorney-General (James A. Sevinsky* and *Shirley Adelson Siegel* of counsel), for Robert F. Flacke and another, respondents.

*Couch, Coulter & Howard, P.C. (Livingston T. Coulter* of counsel), for Bonded Concrete, Inc., respondent.

*Whiteman, Osterman & Hanna (John Hanna, Jr.,* and *Steven G. Brooks* of counsel), for Town of Rotterdam, *amicus curiae.*

**OPINION OF THE COURT**

MAHONEY, P. J.

Although the background of this proceeding is fairly complex, resolution of the instant appeal requires the recitation of only a few salient facts. On April 9, 1979, respondent Bonded Concrete, Inc. (Bonded) applied to the Department of Environmental Conservation (DEC) for a permit to mine a gravel pit located over the Rotterdam Junction Aquifer in the County of Schenectady. The aquifer is part of a larger water system complex which serves as the water supply source for various communities in Schenectady County and southern Saratoga County. The aquifer also fulfills the daily water needs of petitioner in its production of phenols and resin products.

Following the submission by Bonded of an environmental assessment form, DEC issued a notice of determination on July 23, 1979 that the proposed mining project would have no significant effect on the environment. This determination by DEC, known as a "negative declaration", meant that no environmental impact statement (EIS) would be required under the State Environmental Quality Review Act (SEQRA) before action on Bonded's permit application could be taken (see ECL 8-0109, subds 2, 4). Due to increasing opposition to the permit application, DEC assigned their senior engineering geologist the task of examining the geohydrology of the proposed mining site. He concluded that the proposed mining operation would not have any adverse effect upon either the quality or quantity of ground water in the Rotterdam Junction Aquifer. Thereafter, DEC issued Bonded a mining permit on November 16, 1979 which was conditioned upon Bonded's obtaining any required local approval.

Petitioner then commenced this CPLR article 78 proceeding seeking to annul DEC's issuance of the mining permit to Bonded. Special Term dismissed the petition after concluding that although DEC failed to consider the proper data before issuing its negative declaration regard-

ing the filing of an EIS, this defect was subsequently cured by DEC's ultimate consideration of the project's environmental consequences before issuance of the permit (104 Misc 2d 1079). This appeal by petitioner ensued.

Discussion of only one of the issues raised by petitioner is necessary since its resolution will be dispositive of this appeal. Petitioner argues (1) that DEC improperly issued its negative declaration in that it did not consider the necessary data before making that determination, (2) that this defect was not remedied by the subsequent "in house" analysis conducted by DEC's own engineer, and (3) that the mining permit ultimately rendered by DEC was, therefore, invalid. We agree.

In its answer and in its brief on this appeal, DEC has conceded that it did not examine the requisite data before issuing its negative declaration. Although this admission is not binding on Bonded and the other respondents, our review of the record confirms that which DEC has admitted. In deciding whether the proposed project "may have a significant effect on the environment" (ECL 8-0109, subd 2), DEC failed to take a hard look at the relevant areas of environmental concern and make a reasoned elaboration of the basis for its determination (see *H.O.M.E.S. v New York State Urban Dev. Corp.*, 69 AD2d 222, 232). No current independently obtained data was obtained by DEC and the statement which supported its determination not to require the filing of an EIS failed to consider the effect that Bonded's proposed mining project would have on the quantity and quality of the area's water (see 6 NYCRR 617.11 [a] [1]).

Having concluded that the negative declaration was issued by DEC without an analysis of all necessary factors, we turn now to the question of whether that error was subsequently corrected by the analysis which was conducted by DEC. It is important to note that this subsequent analysis by a DEC engineer was done pursuant to the separate, narrower standards of the Mined Land Reclamation Law (ECL art 23, tit 27). As such, it had absolutely nothing to do with the distinct, broader requirements of SEQRA, which provisions had already been held to be inapplicable by DEC's issuance of a negative declaration.

It is the stated purpose of SEQRA "to promote efforts which will prevent or eliminate damage to the environment and enhance human and community resources" (ECL 8-0101). This policy is to be implemented to the fullest extent possible (ECL 8-0103, subd 6). By enacting SEQRA, the Legislature created a procedural framework which was specifically designed to protect the environment by requiring parties to identify possible environmental changes "before they have reached ecological points of no return" *(Matter of Town of Henrietta v Department of Environmental Conservation of State of N.Y.,* 76 AD2d 215, 220). At the core of this framework is the EIS, which acts as an environmental "alarm bell" (76 AD2d, at p 220). It is our view that the substance of SEQRA cannot be achieved without its procedure, and that any attempt to deviate from its provisions will undermine the law's express purposes. Accordingly, we hold that an agency must comply with both the letter and the spirit of SEQRA before it will be found to have discharged its responsibility thereunder *(Matter of Rye Town/King Civic Assn. v Town of Rye,* 82 AD2d 474, app dsmd 55 NY2d 747).

Requiring strict compliance by agencies with SEQRA's initial determination requirements is more than a hollow procedural nicety. The numerous State and local agencies charged with SEQRA compliance may be tempted to circumvent the fundamental, impact statement requirements if it appears that such defects may be subsequently cured without consequence. Permitting substantial compliance would not only frustrate the laudable purposes behind SEQRA, but would inevitably lead to numerous lawsuits wherein courts would be asked to weigh the acceptability of alternative procedures *(Matter of Rye Town/King Civic Assn. v Town of Rye, supra,* p 481).

While the threshold determination of whether a proposed activity *may* have a potential impact on the environment is a low one *(H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232, *supra),* we do not feel it is appropriate in this case to usurp the agency's function and determine whether an EIS must be filed. Extremely technical issues are raised by Bonded's permit application concerning the potential impact of the mining on the

aquifer which lend themselves to DEC's unique and specialized expertise. We, therefore, remand the matter to DEC for a new determination of whether an EIS should be prepared pursuant to ECL 8-0109 (subd 4) and the appropriate regulations.

The order and judgment should be reversed, on the law and the facts, with costs; the petition reinstated, the mining permit issued to Bonded Concrete, Inc. annulled, and matter remitted to the State Department of Environmental Conservation for further proceedings not inconsistent herewith.

SWEENEY, KANE, CASEY and WEISS, JJ., concur.

Order and judgment reversed, on the law, with costs; petition reinstated, the mining permit issued to Bonded Concrete, Inc. annulled, and matter remitted to the State Department of Environmental Conservation for further proceedings not inconsistent herewith.