■ In the Matter of SAVE THE PINE BUSH, INC., et al., Respondents, v PLANNING BOARD OF THE CITY OF ALBANY et al., Appellants, and BENACQUISTA, POLSINELLI AND SERAFINI MANAGEMENT CORPORATION et al., Intervenors-Appellants. — Appeal from a judgment of the Supreme Court at Special Term (Conway, J.), entered November 10, 1982 in Albany County, which granted petitioners' application, in a combined proceeding pursuant to CPLR article 78 and an action for a declaratory judgment, to (1) declare null and void the approval of the Karner Meadows plat by the Planning Board of the City of Albany, (2) declare the waiver of construction of improvements or posting of a performance bond by the planning board null and void, (3) declare that the finding of no significant environmental impact by the City of Albany Environmental Quality Review Board is null and void, (4) declare that section 1(b) of article II of Local Law No. 2-1979 of the City of Albany is null and void, (5) declare that a zoning change for Anderson Office Park is null and void, and (6) enjoin the granting of any approvals or permits for the above projects unless and until an environmental impact statement has been completed. Petitioners brought a combined CPLR article 78 proceeding and declaratory judgment action to halt two developments, one residential and one commercial, in the Pine Bush area of the City of Albany. Petitioners were successful on all grounds at Special Term and respondents take issue on appeal with every part of the judgment except that which declared the waiver of construction of improvements or posting of a performance bond illegal. In October, 1978, respondent Planning Board of the City of Albany gave conceptual approval to intervenors Benacquista, Polsinelli and Serafini Management Corporation (hereinafter BPS) to develop a multiphase project of single-family residences (Karner Meadows), multifamily residences and commercial buildings. On May 21, 1979, respondent City of Albany Common Council passed Local Law No. 2-1979 creating an environmental quality review board (hereinafter EQRB) to act as lead agency and otherwise co-ordinate environmental review under the State Environmental Quality Review Act (hereinafter SEQRA, ECL art 8). In June, 1979, the Albany County Planning Board recommended conditional approval of the BPS project, pending SEQRA compliance. In January, 1980, BPS filed an environmental assessment form (hereinafter EAF) with respondent EQRB pursuant to SEQRA. In April, 1980, the county planning board again recommended conditional approval of BPS' Karner Meadows project. On July 1, 1980, respondent planning board held a hearing on Karner Meadows. On July 7, 1980, respondent EQRB was designated lead agency for that project, and the following day it issued a declaration of no environmental significance (hereinafter negative declaration). On July 16, 1980, respondent planning board approved the BPS plat. The Anderson Office Park project was apparently conceived in 1979. A proposal to rezone the parcel from residential to office space was introduced at respondent common council's February 21, 1980 meeting. An EAF was filed with the EQRB and a public hearing was held by respondent common council on the zoning change on March 17, 1980. On April 15, 1980, the EQRB issued a negative declaration on the zoning change and the rezoning was approved by the common council on June 2, 1980. On August 14, 1980, petitioners commenced the instant action and proceeding; respondents moved to dismiss and the matter was transferred to this court. After ruling on standing and the Statute of Limitations issues, this court held the transfer improper and remitted the case to Special Term for a determination on the merits (*Matter of Save the Pine Bush v Planning Bd.*, 83 AD2d 741). Special Term granted petitioners' application and issued a declaratory judgment nullifying all of respondents' actions. This appeal ensued. Special Term found that the underlying negative declaration with respect to Anderson Office Park was not in accordance with SEQRA regulations (6 NYCRR 617.6

[d] [2]; 617.11, 617.12, 617.13) and that it disregarded the clear and specific requirements of those regulations, resulting in an arbitrary and unreasonable decision. SEQRA requires agency consideration of environmental factors to the fullest extent possible and as early as possible in the formulation of a proposal of an action (ECL 8-0103, subd 6; 8-0109, subd 4). An agency prepares an EAF, a checklist of environmental impacts, to determine initially if the action may have a significant effect on the environment (6 NYCRR 617.6, 617.7). If a proposed action meets certain thresholds (6 NYCRR 617.12), it is classed as a type I action and is deemed likely to require the filing of a more detailed report, the environmental impact statement (hereinafter EIS). The action, whether type I or unlisted, is then compared to other criteria for significant effect (6 NYCRR 617.11). Once a certain threshold of effects is reached, an EIS must be filed (ECL 8-0109, subd 2). The threshold for requiring an EIS is relatively low and the standard for compliance is strict (see *Matter of Schenectady Chems. v Flacke,* 83 AD2d 460; *Matter of Town of Henrietta v Department of Environmental Conservation,* 76 AD2d 215). In order for the court to determine that an agency has met the requirements of SEQRA, the record must show that the agency identified relevant areas of environmental concern, took a " 'hard look' " at them, and made a " 'reasoned elaboration' " of the basis for its determination (*H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232). Petitioners alleged that the lead agency's failure to classify the Anderson Office Park project as a type I action and require an EIS was a violation of SEQRA. They note that the action is a zoning change which exceeds the alteration of 10 acres (6 NYCRR 617.12 [b] [3], [6] [i]) and involves construction of approximately 250,000 square feet of office space (6 NYCRR 617.12 [b] [6] [iv]). Petitioners also note the failure to give due weight in part II of the EAF to certain effects and the failure to include mitigation measures. They also point to the failure to determine the existence of any impacts of importance to the City of Albany in part III of the EAF (see 6 NYCRR 617.11, 617.19). Although an EIS is not a per se requirement of all type I actions (see *Devitt v Heimbach,* 58 NY2d 925), neither can agencies turn a blind eye to those impacts which meet the EIS threshold (see *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484, 493). A review of the record in light of the above considerations fully supports Special Term's determination. Such determination reflects the standard set by the courts to prevent SEQRA from becoming one more step in a "bureaucratic maze" (*supra,* p 493), wherein the fundamental impact requirements are circumvented (see *Matter of Schenectady Chems. v Flacke,* 83 AD2d 460, 463, *supra*). Petitioners' complaints regarding the Karner Meadows proposal are essentially the same as those set forth above, except that petitioners allege additional criteria for type I classification and EIS requirements which were ignored. The plat submitted by BPS was for 248 residences on 121 acres, phase one of a proposed three-phase project. Petitioners note that the project meets the type I requirements in that it is substantially a 250-unit residential development (6 NYCRR 617.12 [b] [5] [iii]), is substantially contiguous to a publicly designated open space and exceeds the 25% threshold of 6 NYCRR 617.12 (b) (5) (iii) (see 6 NYCRR 617.12 [b] [10]), is part of a multiphase project with cumulative impacts (6 NYCRR 617.11 [a] [11], [b] [1]) and is one of several separate projects with cumulative impacts (6 NYCRR 617.11 [a] [11], [b] [1]). These arguments are substantially identical to those submitted with respect to the Anderson Office Park project and, accordingly, the result must be the same. The local law at issue here created in the City of Albany the EQRB with the duties and powers, *inter alia,* "to co-ordinate the efforts of the various agencies of the City of Albany and act as lead agency for the City of Albany in any action which involves more than one such agency". SEQRA provides that the

agency responsible for an action shall make an initial determination as to whether an EIS is required and that when the action is carried out by two or more agencies, a lead agency is to be designated (ECL 8-0109, subd 4). It further provides that the determination of significance "shall be made by the lead agency having principal responsibility for carrying out or approving such action" (ECL 8-0111, subd 6). Similarly, the SEQRA regulations define lead agency as one "principally responsible for carrying out, funding or approving an action" (6 NYCRR 617.2 [r]). Where only one agency is involved in an action, it must act as lead agency (6 NYCRR 617.6 [c]). Criteria are also provided for designating a lead agency among several "involved" agencies (6 NYCRR 617.6 [d]). As noted above, in the instant matter the EQRB was designated to act as lead agency wherever more than one agency was involved in an action. In this regard, *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay* (88 AD2d 484, 492, *supra*) instructs us that delegation of lead agency obligations to an entity not otherwise the decision-making entity is inconsistent with SEQRA for the simple reason that SEQRA's "mandate is to incorporate environmental concerns into the decision-making process of State and local agencies". Respondents' attempts to distinguish *Glen Head* lack substance as does the argument that since the city's planning board and common council discussed environmental impacts, they substantially reviewed the EQRB negative declaration. A reading of the pertinent statutes and regulations reflects an intention for the jurisdictionally responsible decision-making agency to act as lead agency and for the jurisdictionally appropriate agency to act as lead where several agencies are involved. Moreover, the planning board's and common council's consideration of environmental matters, even if substantially a review, does not meet the strict compliance standard (see *Matter of Schenectady Chems. v Flacke*, 83 AD2d 460, *supra*). The determination of Special Term that delegation to the EQRB of lead agency status was null and void should, therefore, be affirmed (*Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay, supra*). Finally, with respect to Karner Meadows, all parties concede that this court's decision in *Matter of Friends of Pine Bush v Planning Bd.* (86 AD2d 246, affd on opn below 59 NY2d 849) makes it necessary to declare the waiver of construction of improvements or the posting of a performance bond illegal. Respondents, however, argue that the remedy is simply to remit the matter to respondent planning board for compliance, rather than to nullify the plat approval. Section 33 of the General City Law provides for prospective compliance, using language such as "[b]efore the approval by the planning board", "[i]n approving such plats", and "[i]n making such determination". The decision of this court also stated that: "section 33 of the General City Law requires that owners install improvements or post a performance bond sufficient to cover the full cost thereof *prior to approval* of a subdivision by the City of Albany Planning Board" (*Matter of Friends of Pine Bush v Planning Bd., supra*, p 250; emphasis added). Consequently, Special Term acted properly in determining that the approval should be nullified on this ground. Judgment affirmed, without costs. Sweeney, J. P., Kane, Casey and Yesawich, Jr., JJ., concur.