*1061 OPINION OF THE COURT
Thomas E. Mercure, J.
Petitioner is the sponsor of an annual event known as the Harley Rendezvous, which it indicates is a fair and exposition for motorcycle enthusiasts and their families at which antique and vintage motorcycles are displayed, merchants buy and sell motorcycle memorabilia and attendees shop for motorcycle parts and accessories. The 1986 event is scheduled to take place on June 20-22, 1986 at Pine Grove Farm, located on Route 7 in the Town of Duanesburg, Schenectady County. The site is located in a GB-General Business zone of the town, in which gatherings of more than 3,500 people are permitted with a special use permit. Petitioner’s estimate is that attendance may reach 8,000, and indications are that attendance at past events has exceeded 10,000.
Petitioner initially made application with the respondent Zoning Board of Appeals (hereafter ZBA) for a special use permit on December 19, 1985, but the application was determined to be incomplete. The completed application was ultimately accepted for filing on January 12, 1986. Under the provisions of the environmental quality review ordinance of the town (hereafter TEQRO), enacted May 26, 1977, actions requiring the approval of the ZBA are Type I actions, thereby triggering the provisions of 6 NYCRR 617.6 and the requirement of the preparation and filing of an environmental assessment form (EAF). Petitioner filed an EAF on January 12, 1986.
Following consideration of the content of the EAF, the ZBA made a determination that the proposed action was in fact a Type I action in accordance with the provisions of TEQRO and 6 NYCRR part 617 and declared itself lead agency for determination of significant effect and, in the event of a positive declaration, preparation and review of draft and final environmental impact statements (hereafter DEIS, FEIS or EIS as is appropriate). Consistent with the requirement of 6 NYCRR 617.6, notice of the ZBA’s designation was given to the other "involved agencies”, they being the New York State Department of Health and the Schenectady County Planning Department. Both agencies concurred in the designation of the ZBA as lead agency. A scoping session was conducted January 22, 1986, at which the environmental assessment form was considered, a further EAF prepared by citizens residing in the area surrounding the proposed project site was considered, and interested citizens presented testimony.
*1062 On or about February 12, 1986, having received copies of petitioner’s preliminary engineering report, filed with the New York State Department of Health in connection with its application for a mass gathering permit (10 NYCRR 7-1.40 et seq.), the ZBA heard a detailed discussion of the report from representatives of the Department of Health. Several issues of potential environmental significance were identified and discussed, they being noise, visual impact, runoff of chemicals into the surface water surrounding the site, water supply, and emergency protection. At a four-hour meeting conducted on that day, the ZBA evaluated and individually voted upon each of the 18 criteria upon which a determination of significance is to be made (6 NYCRR part 617; TEQRO § 5). In so doing, they identified seven criteria of environmental significance upon which a majority felt that the project had the potential for a large environmental impact and two where there was the potential for a small-to-moderate environmental impact. A finding of no environmental impact was made with respect to the remaining nine criteria.
Petitioner and its attorney were then given an opportunity to address the areas of perceived environmental impact and to identify mitigation measures which could be utilized to minimize the potential impacts. At the conclusion of the petitioner’s presentation, the ZBA made a determination, by a 6-to-l vote, that it would be impossible to fully mitigate the potential adverse environmental consequences associated with the proposed project. Accordingly, it made a positive determination of significance. A scoping document was prepared and delivered to petitioner’s attorney on February 19, 1986, setting forth the scope of a DEIS to be prepared by petitioner. Petitioner has not prepared a DEIS to date, its position being that it is under no legal obligation to do so. Hence, the instant proceeding.
The within CPLR article 78 proceeding is in the nature of prohibition, the premise being that the ZBA acted in excess of its jurisdiction, first, in designating itself lead agency and, second, in determining the proposed project to constitute a Type I action, making a positive declaration, and requiring an EIS. In addition, petitioner contends that the ZBA applied TEQRO unconstitutionally and illegally to petitioner; that TEQRO is overbroad on its face and is violative of the statutes and regulations pertaining to regulation of the environment and is violative of petitioner’s rights to equal protection under the law and due process of law as guaranteed by the statutes *1063 and Constitutions of this State and the United States; that the ZBA acted in bad faith and utilized the pretext of environmental protection in order to delay the special use permit application process, thereby jeopardizing petitioner’s ability to promote the scheduled event and to obtain the required mass gathering permit; and that the ZBA discriminated against petitioner and acted in bad faith and with conflict of interest. Respondent has filed a verified answer to the petition and, further, moved to dismiss the petition on several different grounds, including legal insufficiency, lack of standing and failure to exhaust administrative remedies. Petitioner’s contentions shall be discussed separately.
THE AUTHORITY OF THE ZBA TO ACT AS LEAD AGENCY
TEQRO provides (at § III [c] thereof): "Responsibility for environmental review of specified actions shall be designated to the appropriate departments or boards by resolution of the Town Board.”
Petitioner contends, and respondents do not deny, that the Town Board did not pass a resolution authorizing the ZBA to undertake environmental review of petitioner’s project, to designate itself lead agency under the provisions of TEQRO and the State Environmental Quality Review Act (hereafter SEQRA; ECL art 8), to make a determination of Type I status, to assess the environmental significance of the action, to make a positive declaration thereof, to define the scope of a DEIS and to require the preparation and filing of the DEIS. Therefore, the analysis follows, the action of the ZBA was a nullity and should be declared to be so.
It is clear that this express provision of TEQRO was not followed in this case. It is equally clear, however, that the subject provision of TEQRO is violative of SEQRA and the rules and regulations promulgated thereunder and decisional law of this State and should not have been followed. Under the provisions of the zoning ordinance of the Town of Duanesburg, and particularly subsection 13.2 thereof, the responsibility for consideration and determination of applications for a special use permit rests in the ZBA. The Town Board has no responsibility or power in this regard.
6 NYCRR 617.2 (r) defines "lead agency” as "an agency principally responsible for carrying out, funding or approving an action, and therefore responsible for determining whether an environmental impact statement is required in connection *1064 with an action, and for the preparation and filing of the statement if one is required.” But for the requirement of a mass gathering permit, the ZBA would have been the only involved agency and the provisions of 6 NYCRR 617.6 (c) would have required it to act as lead agency. The involvement of the Department of Health, however, triggered the provisions of 6 NYCRR 617.6 (d), which would again lead to a designation of the ZBA as lead agency because of the local impact of the project (6 NYCRR 617.6 [d] [1] [i]). The simple fact is that a lead agency designation was required and the ZBA was the appropriate choice. Action of the Town Board is not and cannot be required to implement the provisions of 6 NYCRR part 617, as such a requirement would constitute an impermissible exercise of power by a local agency in clear contravention of the provisions of SEQRA (see, Glen Head— Glenivood Landing Civic Council v Town of Oyster Bay, 88 AD2d 484, 492; Matter of Save the Pine Bush v Planning Bd., 96 AD2d 986, 988).
THE PROPRIETY OF THE ZBA’S CLASSIFICATION OF PETITIONER’S PROJECT AS A TYPE I ACTION
TEQRO provides in relevant part as follows:
"Section 3. Actions, (a) Consistent with Part 617 of Title 6 NYCRR and the criteria therein, the following actions, in addition to those listed in Section 617.12 of Title 6 NYCRR, are Type I actions:
"1. Actions requiring approval of the Zoning Board of Appeals”.
Petitioner asserts that the subject provision of TEQRO renders the ordinance overbroad as it would necessarily include wholly inconsequential actions, such as, perhaps, minor residential setback or sideline variance applications, within the scope of Type I actions and, as a result, unjustifiably bring on the whole ambit of SEQRA requirements and attendant expense and delay. This analysis is flawed in two substantial respects. First, as properly pointed out by respondents, the language of the subject provision is specifically qualified so as to remain at all times consistent with 6 NYCRR part 617. This qualification would have the effect of limiting the scope of Type I actions under TEQRO to those actions requiring approval of the ZBA which are not specified to be Type II actions in 6 NYCRR 617.13, since 6 NYCRR 617.13 (c) specifically provides that an agency may not designate as Type I any *1065 action on the Type II list. This qualification would, of itself, have the effect of eliminating the great majority of actions having little or no environmental impact from the scope of TEQRO. Second, even if an insignificant action did "slip through the cracks” because it was not specifically set forth on the Type II list, the impact of TEQRO would be limited to the requirement that the applicant file an EAF, a minor inconvenience. If the action were truly inconsequential, the ZBA, assumedly, would make an immediate negative declaration, thereby terminating the review process.
Having determined that TEQRO is not impermissibly over-broad, the next question is whether petitioner’s action is, in fact, included on the Type II list of 6 NYCRR 617.13 and thus altogether exempt from environmental review. Petitioner asserts that the proposed action is specifically covered by number "19” on the list: "[M]inor temporary uses of land having negligible or no permanent effect on the environment”. (6 NYCRR 617.13 [d] [19].) In so doing, it seems, petitioner tends to equate "temporary” with "minor”, the argument being that if an action is temporary it is, a fortiori, minor and one having negligible or no permanent effect on the environment, I disagree. If the drafter of the rules intended this interpretation it would have limited the language to "temporary uses of land”. Further, I must seriously question whether an annual three-day event which concentrates as many as 10,000 participants onto a 115-acre site within a town of only 5,000 residents could be classified as minor in any event. Accordingly, I find that the ZBA was entitled, at the very least, to designate itself lead agency (subject to the notice requirements referred to above), to require the filing of an EAF and to thereafter consider and evaluate the environmental impact of the action, whether the action was at that time considered to be Type I (see, 6 NYCRR 617.6) or unlisted (see, 6 NYCRR 617.7) action.
Next, the court must consider the propriety of the ZBA’s positive declaration of environmental significance and consequential direction that petitioner prepare and file a DEIS. It should be noted at the outset that a positive declaration is not a finding that the proposed action will have a significant effect on the environment. It is, rather, a finding that the proposed action may have a significant effect on the environment. Further, the courts have consistently stressed, first, the low threshold for requiring an environmental impact statement (see, H.O.M.E.S. v New York State Urban Dev. Corp., 69 AD2d 222, 232; Matter of Kirk-Astor Dr. Neighborhood Assn. v Town *1066 Bd., 106 AD2d 868, 870) and, second, the requirement of "literal” and not mere "substantial” compliance with SEQRA (Glen Head — Glenwood Landing Civic Council v Town of Oyster Bay, 88 AD2d 484, supra). In order for the court to determine that an agency has met the requirements of SEQRA, the record must show that the agency identified relevant areas of environmental concern, took a " ' "hard look” ’ ” at them and made a " ' "reasoned elaboration” ’ of the basis for its determination” (Matter of Save the Pine Bush v Planning Bd., 96 AD2d 986, 987, supra).
A review of the record herein shows that the ZBA took the requisite "hard look” and made an altogether rational determination based upon its review of the evidence before it. In fact, its painstaking review and analysis of the 18 criteria contained in 6 NYCRR part 617 and TEQRO are a model of compliance with SEQRA. It was fully justified in its concerns about noise, dust, ground water contamination, parking, traffic congestion, access of emergency vehicles to the site and an adjoining property and adverse impact on the character of the community.
ALLEGATIONS OF DISCRIMINATION, BAD FAITH AND CONFLICT OF INTEREST
The court finds no support in the record for petitioner’s allegations of discriminatory enforcement, bad faith and conflict of interest. Although it is conceded that the ZBA had not previously made a positive declaration of environmental impact with respect to any other function at the proposed site and that a Blue Grass festival, similar in scope to the subject action, was permitted in 1984 absent an EIS, the respondent argues persuasively that it was, first, its negative experience with the Blue Grass festival and what it considered to be its error in not requiring an EIS with respect to that proposed action and, second, its increasing awareness of its responsibilities under SEQRA and TEQRO which accounted for its action here. The proffered evidence of conflict of interest on the part of ZBA members Fowler and Kirchner is equivocal at best and wholly inadequate to overcome the presumption of regularity attendant to administrative determinations (see, General Municipal Law § 800 [3]; Corter v Zoning Bd. of Appeals, 46 AD2d 184).
The remaining contentions raised in respondents’ motion to dismiss need not be considered. The motion is granted.