In the Matter of SAVE THE PINE BUSH, INC., et al., Respondents, v PLANNING BOARD OF THE CITY OF ALBANY et al., Appellants, and BENACQUISTA, POLSINELLI AND SERAFINI MANAGEMENT CORPORATION, Intervenor-Appellant.

Third Department, July 30, 1987

**APPEARANCES OF COUNSEL**

*Vincent J. McArdle, Jr., Corporation Counsel (John C. Egan, Jr.,* of counsel), for appellants.

*Oliver & Oliver (Lewis B. Oliver, Jr.,* and *Harriet B. Oliver* of counsel), for respondents.

*Rutnik & Rutnik (Peter A. Lynch* of counsel), for intervenor-appellant.

**OPINION OF THE COURT**

YESAWICH, JR., J.

This appeal is another growing out of proposed commercial and residential development of the Pine Bush area located within respondent City of Albany *(see, Matter of Save the Pine Bush v City of Albany,* 117 AD2d 267, *mod* 70 NY2d 193;

*Matter of Save the Pine Bush v Planning Bd.,* 96 AD2d 986, *appeal dismissed and lv denied* 61 NY2d 668). The Pine Bush, a unique inland sand dune and habitat of rare plants and animal species such as the endangered Karner Blue butterfly, is recognized as having "a number of distinct environmental characteristics worthy of protecting" *(Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 200).

In the early 1960s intervenor, Benacquista, Polsinelli and Serafini Management Corporation (BPS), purchased 250 acres of land in the Pine Bush and in 1978 presented a conceptual plan for its development in three phases. The first phase called for residential development of 121 acres referred to as the Karner Meadows Residential Subdivision (KMRS). Phases two and three envisioned developing the remaining acreage for commercial and multifamily purposes. This plan, though initially approved by respondent Planning Board of the City of Albany (Board), was subsequently found not to have been in compliance with the State Environmental Quality Review Act regulations (ECL art 8 [SEQRA]) and was annulled *(Matter of Save the Pine Bush v Planning Bd.,* 96 AD2d 986, *supra).*

In August 1984, BPS submitted a new proposal for approval of only the 121-acre KMRS development. After several draft environmental impact statements were prepared and public comment was had thereon, a final generic environmental impact statement (FGEIS) was submitted to the Board in June 1986. The Board granted BPS conditional approval for the KMRS development in August 1986, after which petitioners instituted this suit seeking review of the Board's determination. Supreme Court annulled the Board's decision, prompting this appeal by respondents and BPS. We affirm.

The standard of judicial review of a SEQRA determination is whether the reviewing agency identified the relevant areas of environmental concern, took a "hard look" at them *(H.O.M.E.S. v New York State Urban Dev. Corp.,* 69 AD2d 222, 232), and made a reasoned elaboration of the basis for its determination *(see, Chinese Staff & Workers Assn. v City of New York,* 68 NY2d 359, 363-365; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). Though easily articulated, this standard is often difficult to apply.

Here, Supreme Court concluded that a "hard look" cannot be said to have occurred without "consider[ing] the question of what is the minimum acreage that the Pine Bush ecology needs to survive" or "the number of acres that is a minimum

habitat in order for the Karner Blue butterfly to survive". We agree.

While respondents and BPS suggest that resolution of this issue is "outside the scope of a generic EIS [environmental impact statement]", we deem it precisely the kind of environmental issue that needs to be evaluated when, as here, the habitat of an endangered species is at risk (6 NYCRR 182.6 [a] [2]) and the municipality has opted for maximum development of the land area involved without proposing any substantively salutary mitigating measures which would minimize the adverse environmental effect of its decision; to allow the Board to do otherwise would frustrate the objectives of SEQRA.

Admittedly, an environmental impact statement need not identify and address every conceivable environmental impact, mitigating measure or alternative to satisfy SEQRA (Matter of Jackson v New York State Urban Dev. Corp., supra, at 417; Aldrich v Pattison, 107 AD2d 258, 266), but here the Legislature has taken pains to express heightened environmental concern for the Karner Blue butterfly, whose continued existence depends upon the preservation of its singular habitat, by according it endangered species status. If the Legislature's concern is to be respected, as it must be, then the question of minimum acreage needed to ensure the survival of the endangered species and its habitat is to be resolved. In the light of this, the Board's authorization of maximum development of the land involved, without offering any empirical data or other satisfactory documentation to resolve the minimum acreage issue, was an arbitrary and capricious act.

Additionally, we have considerable doubt as to the quantitative validity of an underlying assumption upon which the entire FGEIS is based. Throughout its entire environmental analysis, the Board observed that a minimum of approximately 1,700 acres of preserve lands were to be set aside for the habitat. However, of this land, only 421 acres then existed within the municipality's borders. Even assuming that the proposed purchase of an additional 160 acres by the city will be consummated, the lion's share of the proposed 1,700 acres remains 616 acres of land which are presumably to be purchased in the Town of Colonie, Albany County, another municipality. Thus, the Board's approval of BPS' plan presupposed land purchases which the record does not disclose have indeed been consummated. The reality appears to be that the Board's approval was given on substantially less than a 1,700-acre preserve.

Additionally, we are in agreement with Supreme Court's conclusion that the Board's decision not to require a bond for the full amount of the projected costs of improvements and instead to allow for bonding in stages over the four-phase 10-year period that the KMRS development will be under construction violated General City Law § 33. General City Law § 33, *inter alia,* permits the Board to adjust the value of a performance bond "at any time *during the term of the performance bond"* (emphasis supplied). This language contemplates adjustments in the bond once performance is underway. An "anticipatory adjustment" is not countenanced by the statute *(see, Matter of Friends of Pine Bush v Planning Bd.,* 86 AD2d 246, 249, *affd on opn below* 59 NY2d 849). As a condition of approval of an entire subdivision, the owner must install the improvements or furnish a bond for improvement costs occasioned by the development of the entire site before commencing construction *(see, supra).*

MAHONEY, P. J., CASEY, LEVINE and HARVEY, JJ., concur.

Order and judgment affirmed, without costs.