■ In the Matter of SAVE SOUTHARD ROAD NEIGHBORHOOD COALITION et al., Appellants, v TOWN OF SARATOGA PLANNING BOARD et al., Respondents. [825 NYS2d 585]—

Carpinello, J. Appeal from a judgment of the Supreme Court (Ferradino, J.), entered September 12, 2005 in Saratoga County, which, inter alia, dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town of Saratoga Planning Board finding that a certain subdivision proposal complied with the State Environmental Quality Review Act.

At issue is a proposed 11-lot subdivision on 69.11 acres of land in the Town of Saratoga, Saratoga County. The proposed lot sizes within the subdivision range in acreage from 4.29 to 10.705 and each lot will be serviced with a private well and septic system. Petitioners are adjoining property owners, as well as an unincorporated community association of residents who live in the vicinity. From the onset, petitioners' primary objection to the proposed project concerned the issue of groundwater quantity and quality. In short, petitioners were concerned that the drilling of additional wells on the proposed lots would diminish the already inadequate groundwater supply in the area.

With respect to review of the project under the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), respondent Town of Saratoga Planning Board, which had declared itself lead agency in the matter (see 6 NYCRR 617.2 [u]), required the completion of a full environmental assessment form for the project and a coordinated review. After three public hearings and its review of numerous reports pertaining to, among other issues, the disputed groundwater issue, as well as its receipt of numerous written and oral comments and its holding of a special workshop devoted exclusively to consideration of comments filed in response to a draft conditioned negative declaration, the Planning Board ultimately issued a final conditioned negative declaration (see 6 NYCRR 617.2 [h]) and approved the project.

The conditioned negative declaration contained nine specific conditions, including detailed testing requirements and criteria which each new well must meet before a building permit could be issued on any individual lot. The parameters of this testing were formulated by the Town Engineer after he considered the opinions and/or written reports of the parties' respective profes-

sional engineers and upon consultation with an independent engineer. Thereafter, petitioners commenced this CPLR article 78 proceeding challenging the Planning Board's actions. Supreme Court dismissed the petition. This appeal by petitioners ensued.

We begin by restating the well-settled rule that "it is not the role of the courts to weigh the desirability of any [SEQRA] action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 416 [1986]). Here, upon our review of the record, we are satisfied that the Planning Board complied with all substantive and procedural mandates in determining that the project would have no significant environmental impact and in issuing the conditioned negative declaration. Most notably, the Planning Board identified the areas of environmental concern, particularly the project's potential negative effect on the quality and quantity of the groundwater supply, took a hard look at all such concerns and made a reasoned elaboration for its decision to issue a conditioned negative declaration (*see Matter of Merson v McNally*, 90 NY2d 742, 751-752 [1997]; *Matter of Jackson v New York State Urban Dev. Corp., supra* at 417; *Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush*, 16 AD3d 715, 721-722 [2005]; *cf. Matter of Schenectady Chems. v Flacke*, 83 AD2d 460, 462 [1981]).

First, areas of environmental concern, including whether the project would affect groundwater quality and quantity, were identified in the environmental assessment form and also referenced in the conditioned negative declaration itself (*see Matter of Heritage Co. of Massena v Belanger*, 191 AD2d 790, 792 [1993]; *Matter of Stewart Park & Reserve Coalition v New York State Dept. of Transp.*, 157 AD2d 1, 7 [1990], *affd* 77 NY2d 970 [1991]). Moreover, the conditioned negative declaration sets forth the Planning Board's consideration of a hydrogeologic study completed by an engineering firm retained by the applicants,[1] a critical review of that study by an engineering firm retained by petitioners and the independent review of the matter by yet another engineer.[2] While this independent consultant took issue with certain aspects of the applicants' hydrogeologic report, a consensus was eventually reached between him, the

---

1. This firm concluded, after conducting certain pump and water quality tests, that there was sufficient groundwater available for the proposed subdivision without adversely impacting nearby private water supplies.

2. In the face of the conflicting opinions of the parties' respective engineers, the Town Engineer sought out this third, independent opinion.

applicants' engineer and the Town Engineer that all rural water supply guidelines and state requirements could be met for this project. This consensus was noted in a memorandum prepared for, and considered by, the Planning Board.

Moreover, the issue of groundwater, as well as many other environmental issues, were addressed at all public hearings and also reviewed at length at a special workshop conducted by the Planning Board to discuss comments to the draft conditioned negative declaration (*see Matter of Anderson v Lenz*, 27 AD3d 942, 944 [2006], *lv denied* 7 NY3d 702 [2006]). At this meeting, the Town Engineer addressed numerous questions from Planning Board members about the issue of groundwater and he indicated that the applicants would have to pass separate quantity and quality water tests before a building permit could be issued on any given lot. Thus, it cannot be fairly stated that the Planning Board failed to identify and take a hard look at all issues and concerns raised by petitioners. To this end, we are unpersuaded by petitioners' argument that the use of future testing to determine whether any given lot can actually be developed is akin to making a SEQRA determination without the benefit of all necessary information and therefore akin to making such determination without the requisite "hard look" (*cf. Matter of Schenectady Chems. v Flacke, supra; Town of Red Hook v Dutchess County Resource Recovery Agency*, 146 Misc 2d 723, 728 [1990]). Furthermore, the statements contained in the conditioned negative declaration concerning the project, as well as the conditions imposed, constitute a reasoned elaboration on the part of the Planning Board.

We are further unpersuaded by petitioners' argument that the record does not support a finding that the conditions imposed will mitigate potential impacts because the testing outlined is less rigorous than that recommended by their own expert and because the conditioned negative declaration fails to ensure that future testing methods are adequate. With respect to the former argument, we note that scientific unanimity among experts need not be achieved in matters of SEQRA determinations (*see Matter of Argyle Conservation League v Town of Argyle*, 223 AD2d 796, 798 [1996]; *Matter of Morse v Town of Gardiner Planning Bd.*, 164 AD2d 336, 340-341 [1990]; *Matter of Schodack Concerned Citizens v Town Bd. of Town of Schodack*, 148 AD2d 130, 134 [1989], *lv denied* 75 NY2d 701 [1989]). Moreover, the testing procedures ultimately mandated were implemented by the Town Engineer after consultation with an independent consultant, and nothing in the record casts doubt on either of these expert's reliability (*see Matter of Stew-*

*art Park & Reserve Coalition v New York State Dept. of Transp., supra* at 7).

As to the adequacy of future testing, the first condition imposed states that "[s]tabilized well yield testing shall be witnessed and certified by a professional engineer stating that the well meets the following parameters." The subsequent conditions go on to outline those parameters. The Planning Board determined that these measures, i.e., prohibiting the issuance of a building permit on a lot by lot basis unless certain water tests were conducted and passed, negated the potentiality of any adverse groundwater effects that the project would have in the area. This precise determination, i.e., the sufficiency of the proposed mitigation measures, is itself "subject to a judicial examination of whether the [Planning Board] took the requisite hard look" (*Matter of Merson v McNally*, 90 NY2d 742, 754 [1997], *supra*). We find that the Planning Board did indeed take the requisite hard look at the precise issue of the sufficiency of the mitigation measures themselves.

In short, based upon our review of the record as a whole, we cannot say that the Planning Board failed to discharge its obligations under SEQRA or that it erred in issuing the conditioned negative declaration. Petitioners' remaining contentions, to the extent properly preserved for review, have been reviewed and rejected, including the claim that the Planning Board engaged in improper segmentation of the project.

Cardona, P.J., Spain, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.