OPINION OF THE COURT
Kavanagh, J.
Petitioner Save the Pine Bush, Inc. is an organization that lists as its purpose, among other things, the protection and preservation of the Earner blue butterfly—which is listed on the federal and state endangered species lists—and its habitat, as well as other species that live in the Pine Bush in Albany County. The Pine Bush Preserve is an area of land, several thousand acres large, set aside by the City of Albany for the protection of the Earner blue butterfly, its habitat and other rare species.[1] The long-term goal of the Preserve is to induce Earner blue butterflies to spread from an area east of the Preserve, known as Butterfly Hill—located approximately 1,000 meters outside the Preserve—to the Preserve.
In September 2003, respondent Tharaldson Development Company (hereinafter the developer) submitted an application to the City of Albany to rezone 3.6 acres of property located in Albany County from a Rl-B single family residential district to a C-2 highway commercial district for the construction of a 124- *35 unit hotel. The property is located near Butterfly Hill.[2] Pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]), respondent Common Council of the City of Albany assumed lead agency status (see 6 NYCRR 617.6 [b] [1] [i]) and designated the project as a type I action (see 6 NYCRR 617.4 [b] [6] [i]). The Common Council issued a positive declaration of environmental significance as to the property and, after a public scoping[3] session, a draft environmental impact statement (hereinafter DEIS) was prepared. The DEIS was accepted by the Common Council in March 2005 and numerous public hearings were held and written comments received during this process. A final environmental impact statement (hereinafter FEIS) was then prepared and accepted by the Common Council in November 2005. One month later, the Common Council accepted the SEQRA findings statement and rezoned the property.
Petitioners commenced this CPLR article 78 proceeding seeking relief under nine causes of action challenging the SEQRA process that the Common Council followed. Claiming that petitioners lacked standing, respondents moved to dismiss the petition and petitioners cross-moved to amend the petition. Supreme Court (Ferradino, J.) granted the cross motion to amend the petition, found that petitioners had standing and denied the motion to dismiss. As to the merits of the petition, Supreme Court (McNamara, J.) found that the Common Council took the required hard look at whether the site was an occupied habitat for the Karner blue butterfly. However, the court also concluded that the Common Council failed to take the required hard look at whether the proposed development would have an impact on other rare plant and animal species in the Pine Bush. Based on this finding, the court granted the petition and annulled the Common Council’s decision approving the developer’s rezoning application. Respondents now appeal the court’s order which found that petitioners had standing,[4] as well as the amended judgment which granted the petition. Petitioners *36 cross-appeal, arguing that the court erred to the extent that it concluded that the Common Council took a hard look at whether the development site was an occupied Karner blue butterfly habitat and whether there would be a resulting taking of the Karner blue butterfly.[5] We now affirm Supreme Court’s judgment and amended judgment.
First addressing the question of standing, petitioners were required to establish that they have sustained an injury-in-fact that is in some way different from that of the public at large and one that falls within the zone of interest protected by SEQRA (see Society of Plastics Indus, v County of Suffolk, 77 NY2d 761, 777 [1991]). An ‘‘[i]njury-in-fact may arise from the existence of a presumption established by the allegations demonstrating close proximity to the subject property or, in the absence of such a presumption, the existence of an actual or specific injury” (Matter of Powers v De Groodt, 43 AD3d 509, 513 [2007] [citation omitted]; see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town ofN. Hempstead, 69 NY2d 406, 413-414 [1987]). Moreover, as an organization seeking standing, Save the Pine Bush “must demonstrate that at least one of its members would have standing to sue individually, that the interests it asserts are germane to its purpose and that the resolution of the claim does not require the participation of its individual members” (Matter of Saratoga Lake Protection & Improvement Dist. v Department of Pub. Works of City of Sara-toga Springs, 46 AD3d 979, 982 [2007], Iv denied 10 NY3d 706 [2008]; see Society of Plastics Indus, v County of Suffolk, 77 NY2d at 775).
Initially, we agree with Supreme Court that none of the individual petitioners resides close enough to the proposed project so as to presumptively demonstrate that they have sustained demonstrable injury different from the public at large (see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town
*37 of N. Hempstead, 69 NY2d 406 [1987]; Matter of McGrath v Town Bd. of Town of N. Greenbush, 254 AD2d 614, 615 [1998], lv denied 93 NY2d 803 [1999]). The closest that any of the individual petitioners lives to the site is 2,628 feet, and none lives adjacent to it (see Matter of Oates v Village of Watkins Glen, 290 AD2d 758, 761 [2002]; Matter of Save Our Main St. Bldgs, v Greene County Legislature, 293 AD2d 907, 908 [2002], Iv denied 98 NY2d 609 [2002]).
The individual petitioners have, however, demonstrated the existence of an actual injury different from that of the public at large. Petitioners have presented competent evidence not only that they regularly use the Preserve, but that at least one of them resides in sufficient proximity to the Preserve to facilitate that use and that the proposed development could have a substantial impact upon the migration of the Earner blue butterfly from Butterfly Hill to the Preserve.[6] As such, petitioners have identified an injury-in-fact that falls within the zone of interest sought to be protected by SEQRA by presenting proof that “agency action will directly harm association members in their use and enjoyment of the affected natural resources” (Society of Plastics Indus. v County of Suffolk, 77 NY2d at 776; see Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Council of City of N.Y., 214 AD2d 335, 336 [1995], Iv denied 87 NY2d 802 [1995]).
We respectfully disagree with the conclusion of the dissent that the individual petitioners’ use and enjoyment of the Preserve is not sufficient to establish an interest different from that of the public at large. As alleged in the amended petition, petitioners Rezsin Adams, John Wolcott, Lynne Jackson, Lucy Clark, Anne Sombor, Russell Ziemba, Sandra Camp, Dave Camp and Larry Lessner (hereinafter the individual petitioners), all “use the Pine Bush for recreation and to study and enjoy the unique habitat found there” and have made efforts “over the years to protect the Pine Bush by speaking out at hearings, reviewing documents and development plans, organizing fund raisers to fund law suits and in many other ways advocating on behalf of the Pine Bush.” According to the amended petition, *38 the individual petitioners have actively pursued the protection of the Karner blue butterfly species and, in our view, have adequately alleged that the butterflies’ habitat and the butterflies’ survival in the Preserve—and the individual petitioners’ regular and consistent enjoyment of same—could be adversely impacted by the developer’s proposed actions in a manner sufficient to confer standing to bring this proceeding.[7] When compared to other members of the public, we view the individual petitioners’ interests in the preservation and protection of the Preserve to be distinct and unique. Their individual use of this property, coupled with their historic involvement in the creation of the Preserve and the protection of this habitat, give them a stake in this proceeding and standing to maintain this action.
While the dissent challenges our decision as a departure from Society of Plastics Indus, and a variety of cases that followed, we note that this is not the first instance where the use and enjoyment of a public resource by an individual member of an organization was sufficient to establish a distinct, injury-in-fact. In Matter of Committee to Preserve Brighton Beach & Manhattan Beach v Planning Commn. of City of NY. (259 AD2d at 31-32) (hereinafter Brighton Beach), it was determined that the four individual petitioners’ allegations that the challenged development would “interfere with their use and enjoyment of the park” constituted an injury-in-fact (id. at 32). In describing *39 the four individual petitioners, the Court noted that three of them owned cooperative apartments in a building that overlooked the park from across a parkway. The fourth individual petitioner was described as a person who “use[d] the park for recreational purposes” (id. at 29) and was not one of the three who owned a nearby apartment. The Court went on to conclude that “since three of the individual petitioners live in close proximity to the park, and one uses it regularly, it is obvious that many of the alleged injuries would affect the petitioners in a manner wholly distinct from that of the public at large” (id. at 32 [emphasis added]), and it found that all of the four individual petitioners had standing. The Court clearly concluded that the fourth individual petitioner’s use of the park—even in the absence of a finding that he or she lived in close proximity to the park—was sufficient to confer standing to this individual petitioner.
In Matter of Saratoga Lake Protection & Improvement Disk v Department of Pub. Works of City of Saratoga Springs (46 AD3d 979 [2007]), this Court found that the president of the Saratoga Lake Association had presumptive standing because of the proximity of her property to the challenged project (within 1,000 feet) and, as in Brighton Beach, recognized an injury-in-fact existed based upon the combined effects of her residing near the lake and the impact the project would have on her use of it. Specifically, the Court noted that “[although the restrictions that [she] cites will result in the same kind of harm as suffered by the public at large, the proximity of [her] property to the proposed site will result in her suffering that harm to a greater degree” (id. at 983).
Moreover, the question of standing here as it relates to the Preserve involves unique circumstances not present in any of the cases cited by the dissent. Undoubtedly, the individual petitioners, as affiliated with Save the Pine Bush, have played an important, if not indispensable, role in the creation of the Preserve and the ongoing effort to protect and preserve it. In our view, the amended petition adequately alleged that their use and enjoyment of the Preserve, coupled with their historic involvement in its creation, protection and preservation, is so significant as to establish an injury greater than that suffered by the public at large. As a result, as at least one of its individual members has standing, Save the Pine Bush has standing that flows therefrom.
Furthermore, while we find that petitioners have standing based on the individual petitioners’ distinct injury, we find it important to note that Save the Pine Bush has long been *40 recognized as “a not-for-profit corporation whose purpose is to ‘promote the preservation of Albany’s unique and beautiful pine barrens’ ” (.Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 201 [1987). In furtherance of that purpose, Save the Pine Bush and many of its individual members have, for more than 25 years, brought a myriad of legal proceedings challenging development in the area surrounding the Preserve and its potential affect thereon (see Matter of Save the Pine Bush v New York State Dept. ofEnvtl. Conservation, 289 AD2d 636 [2001], Iv denied 97 NY2d 611 [2002]; Matter of Save the Pine Bush v City of Albany, 281 AD2d 832 [2001]; Matter of Save the Pine Bush v Common Council of City of Albany, 225 AD2d 187 [1996]; Matter of Save the Pine Bush v City Engr. of City of Albany, 220 AD2d 871 [1995], Iv denied 87 NY2d 807 [1996]; Matter of Save the Pine Bush v Zoning Bd. of Appeals of Town of Guilderland, 220 AD2d 90 [1996], Iv denied 88 NY2d 815 [1996]; Matter of Save the Pine Bush v Planning Bd. of Town of Guilderland, 217 AD2d 767 [1995], Iv denied 87 NY2d 803 [1995]; Matter of Save the Pine Bush v Cuomo, 200 AD2d 859 [1994], Iv dismissed 83 NY2d 884 [1994]; Matter of Save the Pine Bush v Common Council of City of Albany, 188 AD2d 969 [1992]; Matter of Save the Pine Bush v City of Albany, 141 AD2d 949 [1988], Iv denied 73 NY2d 701 [1988]; Matter of Save the Pine Bush v Planning Bd. of City of Albany, 130 AD2d 1 [1987], Iv denied 70 NY2d 610 [1987], cert denied sub nom. Benacquista, Polsinelli & Serafini Mgt. Corp. v Save the Pine Bush, 486 US 1032 [1988]; Matter of Save the Pine Bush v City of Albany, 117 AD2d 267 [1986], affd 70 NY2d 193 [1987]; Matter of Save the Pine Bush v Planning Bd. of City of Albany, 96 AD2d 986 [1983], appeal dismissed and Iv denied 61 NY2d 668 [1983], Iv denied 61 NY2d 602 [1983]; Matter of Save the Pine Bush v Planning Bd. of City of Albany, 83 AD2d 741 [1981]). In fact, Save the Pine Bush’s earliest legal proceedings were instrumental in the creation and designation of the Preserve (see Matter of Save the Pine Bush v City of Albany, 70 NY2d at 193; Matter of Save the Pine Bush v Common Council of City of Albany, 188 AD2d at 969), and in some later proceedings successfully challenged various SEQRA determinations that affected development in that area.[8]
Simply stated, Save the Pine Bush and its membership have a long and distinguished history of involvement with the Preserve. *41 They were instrumental in its creation and have been actively involved in ongoing efforts to insure its long-term protection and preservation. Save the Pine Bush’s membership, some of whom live near the Preserve, and most, if not all, of whom use and enjoy it on a regular basis, claim in their petition that this development poses a serious threat to the Preserve and the species that live in it. The nature of that claim and the intimate involvement of petitioners in the preservation of this environmental asset give them a stake in this proceeding and the standing to maintain it.
We now turn to Supreme Court’s decision regarding the merits of the petition. The Common Council’s obligations as lead agency are to “identifly] the relevant areas of environmental concern, [take] a ‘hard look’ at them, and [make] a ‘reasoned elaboration’ of the basis for its determination” (.Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417 [1986], quoting Aldrich v Pattison, 107 AD2d 258, 265 [1985]; see Matter of Eadie v Town Bd. of Town of N. Greenbush, 47 AD3d 1021, 1024 [2008]). Where these obligations have been met, “it is not the role of this Court to second-guess [the Common Council’s] determination and/or substitute our judgment for the conclusions it has reached” (Matter of Anderson v Lenz, 27 AD3d 942, 944 [2006], Iv denied 7 NY3d 702 [2006]; see Matter of Merson v McNally, 90 NY2d 742, 752 [1997]). Rather, our review is limited to “whether [the] determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion” (CPLR 7803 [3]; see Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d at 416; Matter of MLB, LLC v Schmidt, 50 AD3d 1433, 1434 [2008]).
Here, Supreme Court granted the third cause of action, finding that the Common Council failed to take a hard look at *42 whether any of the other rare plant and animal species in the Pine Bush—aside from the Karner blue butterfly—were adversely impacted by implementation of this project. During the scoping process, the Department of Environmental Conservation advised the Common Council that the Karner blue butterfly is but “one species in a rare habitat that is known to support numerous rare [and] unusual species,” and that other threatened species—such as the frosted elfin butterfly and species of special concern such as the hognosed snake, worm snake and eastern spadefoot toad—might be affected by this project. The Department of Environmental Conservation requested that an evaluation of the project’s potential impact on these species be conducted. Then, after publication of the DEIS—which did not address the project’s potential impact on these other species—the United States Fish and Wildlife Service (hereinafter USFWS) advised the Common Council that the frosted elfin butterfly is present in the area adjacent to the project site and requested that the developer ascertain (1) whether any other threatened or endangered species are present there, and (2) the project’s potential impact on them.
The Albany Pine Bush Preserve Commission also advised the Common Council that it would not support a rezoning of the project site unless an evaluation was conducted of the project’s potential impact on “rare and listed plant and animal species,” including the frosted elfin butterfly. Thereafter, the FEIS responded to these comments by stating that Richard Futyma—the expert retained by the developer to study the project site—“confirmed] that there are no plants or animals on the [p]roject [s]ite that are listed as rare, threatened or endangered by [this s]tate or the [flederal government.” However, Futyma by his own admission, focused his investigation of the project site on the Karner blue butterfly, and expressly stated that “[his] observations of animals on the site were confined to butterflies.” In fact, the record belies any contention that Futyma investigated the presence of any other animal species on the project site other than the Karner blue butterfly, let alone how the project could potentially impact them. Further, although Futyma prepared a list of the plants present on the project site, he concluded that they were neither rare, threatened nor endangered. He did not determine whether any such plant species exists near the site and, if so, whether they would be adversely impacted by the project. Under these circumstances, we agree with Supreme Court that the Common Council did not *43 fulfill its obligation to take a hard look at the potential impact of the project on other rare plant and animal species in the Pine Bush and, consequently, its SEQRA determination was arbitrary, capricious and properly vacated.
With regard to petitioners’ cross appeal, we perceive no error in Supreme Court’s dismissal of the remaining causes of action in the petition. Both the FEIS and the findings statement considered, among other things, the conclusions reached by Futyma following his several visits to the project site in 2000, 2004 and 2005—namely, that there are no Earner blue butterflies on the site and that the site does not contain blue lupine plants—to support his finding that the project will not impact upon the Earner blue butterfly. Consequently, we reject petitioners’ contention that the Common Council did not take a hard look at the potential impact of the project on the Earner blue butterfly or set forth in sufficient detail the basis for its determination.
Similarly unavailing is petitioners’ contention that the Common Council improperly adopted the FEIS before the USFWS determined whether the project would result in a taking of the Earner blue butterfly under the Federal Endangered Species Act (see 16 USC § 1532 [19]) and, if so, would require the developer to obtain an incidental take permit (see 16 USC § 1539 [a] [1] [B]). “Though the SEQRA process and individual agency permitting processes are intertwined, they are two distinct avenues of environmental review,” and where “a lead agency sufficiently considers the environmental concerns addressed by particular permits, [it] need not await another agency’s permitting decision before exercising its independent judgment on that issue” (Matter of Riverkeeper, Inc. v Planning Bd. of Town of Southeast, 9 NY3d 219, 234 [2007]). Here, the USFWS advised the Common Council in April 2005 of its intention to visit the project site to determine whether Earner blue butterflies are present. Then, after having heard nothing for more than seven months from USFWS, the Common Council adopted the FEIS, which determined that the project would not result in a taking of the Earner blue butterfly because, based upon the information provided, it concluded that there are no butterflies present at the site. Although the USFWS subsequently visited the site in June 2006 and then in September 2006 and notified the developer that it may be required to obtain an incidental take permit, the Common Council, given the consideration it paid to the environmental concerns raised by the USFWS, was not *44 required to await the permitting decision of the USFWS before adopting the FEIS and issuing its findings statement.

. In 1987, the Court of Appeals described the Pine Bush as follows: “The Pine Bush, partially within the City of Albany, contains the only remaining large pine barrens on inland sand dunes in the United States. Its unusual inland sand dune composition is the home of rare plant and animal species such as the endangered Earner [b]lue [b]utterfly (ECL 11-0535) which survives on the blue lupine, a plant indigenous only to the pine barren. The record establishes that the Pine Bush has a number of distinct environmental characteristics worthy of protecting” (Matter of Save the Pine Bush v City of Albany, 70 NY2d 193, 200 [1987]).

. At the time the petition was brought, a majority of the property was a vacant parking lot located near local shopping centers and commercial office buildings.

. Scoping is the process by which the lead agency identifies and focuses on the potentially significant adverse impacts related to the proposed project that are to be addressed in a draft environmental impact statement (see 6 NYCRR 617.8).

. The Common Council’s appeal from the September 2006 order denying respondents’ motions to dismiss the petition must be dismissed “as no appeal *36 as of right lies from a nonfinal order in a CPLR article 78 proceeding” (Matter of Hebei v West, 25 AD3d 172, 175 n 1 [2005], Iv denied 7 NY3d 706 [2006]; see CPLR 5701 [b]). “However, the appeal from the final judgment brings this order up for review” (Matter of Hebei v West, 25 AD3d at 175 n 1 [citation omitted]).

. We note that petitioners cross-appeal only from Supreme Court’s judgment entered in February 2007 and not from the amended judgment entered in July 2007. While no appeal lies from a judgment that has been superseded by an amended judgment, the amended judgment was merely technical and, in any event, we will exercise our discretion and treat the cross appeal as taken from the amended judgment (see CPLR 5520 [e]; Van Scooter v 450 Trabold Rd., 206 AD2d 865, 866 [1994]).

. We agree with respondents that Supreme Court erred by finding that the proposed actions could diminish the individual petitioners’ “use and enjoyment of the area the respondents propose to develop,” as the development site is private property and petitioners have no right to use and enjoy that area (see Matter of Save the Pine Bush, Inc. v Planning Bd. of Town of Clifton Park, 50 AD3d 1296 [2008], Iv denied 10 NY3d 716 [2008]). We assume, however, that Supreme Court merely misspoke in this regard.

. We recognize that a different conclusion was reached in Matter of Save the Pine Bush, Inc. v Planning Bd. of Town of Clifton Park (50 AD3d at 1297) (hereinafter Clifton Park). In that case, petitioners challenged the development of private property where, they alleged, the Karner blue butterfly had been seen. Unlike the situation here, the petitioners in Clifton Park could not establish that their right to view and enjoy the Karner blue butterfly would be affected by the challenged development (id. at 1297). This Court found not only that none of the individual petitioners lived in close proximity to the site, but also that none suffered an injury-in-fact different from the general public (id. at 1297). A significant distinction in the two cases is the fact that the petitioners in Clifton Park had no protected interest in the use and enjoyment of viewing Karner blue butterflies on private property and, more importantly, the evidence in the record indicated that no Karner blue butterflies had been seen on the property since 2001, and only three had been seen since 1997 (id. at 1297 n 1). In addition, the developer in Clifton Park had designated, as a preserve on the site, an area where a small amount of blue lupine plants were found to exist (id. at 1297 n 2). Unlike the situation in Clifton Park, petitioners here have challenged that the proposed development could lead to the possible destruction of the Karner blue butterfly habitat in the Preserve, and possibly prevent the butterflies from migrating from Butterfly Hill to the Preserve, which—if established—would have a direct result and adverse impact on the individual petitioners’ ability to use and enjoy the Preserve.

. We recognize that petitioners urge this Court to find that this is a case which focuses on an indiscriminate, nongeocentric harm and, therefore, based on their interpretation of Society of Plastics Indus, v County of Suffolk (77 *41 NY2d at 776), a showing of an injury distinct from the public at large is not required. However, we do not agree with the dissent that this urging precludes us from finding that petitioners have, in fact, suffered a distinct injury so as to give them standing. In addition to arguing that this case focuses on an indiscriminate, nongeocentric harm, petitioners also advanced the argument that they “use and enjoy the public resources of the Pine Bush, and have shown by their remarkable dedication, advocacy, and commitment to the Pine Bush, that they would also have an interest greater than the public as a whole to the loss of the Earner blue butterfly” (emphasis added). Petitioners’ counsel also remarked—in reference to Save the Pine Bush—that “it would [be] hard to conceive of a plaintiff with greater interest [in the Preserve].” Accordingly, it is our view that—despite petitioners’ attempt to persuade us to reach standing on a different basis—we are not precluded from deciding as we do.