In the Matter of SCHODACK CONCERNED CITIZENS et al., Plaintiffs-Petitioners, v TOWN BOARD OF THE TOWN OF SCHODACK et al., Defendants-Respondents. HANNAFORD BROTHERS Co. et al., Intervenors-Respondents.

Supreme Court, Rensselaer County, February 7, 1989

### APPEARANCES OF COUNSEL

*Oliver & Oliver (Lewis B. Oliver, Jr.,* and *Harriet B. Oliver* of counsel), for plaintiffs-petitioners. *Whiteman, Osterman & Hanna* for Town Board of Town of Schodack and others, defendants-respondents. *Shanley, Sweeney & Reilly, P. C.,* for intervenors-respondents.

## OPINION OF THE COURT

F. WARREN TRAVERS, J.

### BACKGROUND

Hannaford Brothers Co., a New England food retailer, operating a number of supermarkets and drugstores, has commenced construction of a distribution facility in the Town of Schodack. The building when finally completed will exceed one million square feet in size. Approximately 480 people will be employed there. The facility will be operated 24 hours a day, 6.5 days per week. Approximately one half of the 100-acre site will be developed. The facility will generate 260 tons of solid waste per month. An estimated 1,800 truck trips in and out of the facility will be made every 24 hours. A significant change in the noise level is anticipated. A number of other impacts are also expected. Needless to say, this is a very large project having significant impact on the surrounding neighborhood.

Prior to commencement of construction, Hannaford Brothers Co. needed various approvals. The area needed to be partially rezoned. The Town Board of the Town of Schodack was the municipal authority responsible for rezoning. The land needed subdivision approval. The Planning Board of the Town of Schodack was responsible for such subdivision approval. The project also required site plan approval. The Schodack Planning Board also had responsibility for site plan approval. A special use permit was needed. The Schodack Planning Board also had responsibility for approving a special use permit along with a timber permit. The water supply and sewage disposal systems had to be approved by the Rensselaer County Health Department. Funding for the project is to be approved by and provided through the Rensselaer County Industrial Development Agency. The New York State Department of Environmental Conservation has permit approval over the wastewater disposal system, State pollution discharge elimination system permit, open burning permit, and a dam safety permit. The New York State Department of Transportation must grant a highway work permit for roadway improvements.

Pursuant to the State Environmental Quality Review Act (SEQRA) (ECL art 8), the Planning Board circulated a lead agency coordination request to all involved agencies. The Planning Board expressed its interest in being the lead

agency. The other involved agencies agreed that the Planning Board should act as lead agency.

The Planning Board named itself as lead agency. The Planning Board determined that the project may have a significant impact upon the environment and determined that an environmental impact statement would be required.

Hannaford Brothers Co. engaged Clough, Harbour & Associates to prepare the environmental impact statement and provide other engineering services. The Planning Board retained C. T. Male Associates as a consulting firm to assist it in reviewing the project. The SEQRA process commenced and followed various stages until completed.

The plaintiffs-petitioners commenced this combined CPLR article 78 proceeding and declaratory judgment action seeking to set the approvals granted by the defendants-respondents. The specific claims and replies will be addressed in order according to the causes of action in the petition-complaint.

The plaintiffs-petitioners submitted the notice of petition, summons, petition-complaint and attachments, affidavits, memorandum of law, letter correspondence. The defendants-respondents have submitted answers, affidavits, memorandum of law, letter correspondence along with the draft environmental impact statement, the final environmental impact statement, 50 sheets of construction drawings, road improvement drawings, subdivision map, record of proceedings. The intervenors-respondents have submitted an answer, memorandum of law, affidavits and letter correspondence. In addition, the court entertained extensive oral argument by counsel for all parties.

### FIRST CAUSE OF ACTION

Plaintiffs-petitioners claim that the Schodack Town Board made an illegal delegation of lead agency status to the Schodack Planning Board. The claim is that the Town Board has the principal decision-making authority and that pursuant to SEQRA and the regulations thereunder, the Schodack Town Board must be the lead agency. The assertion is that the project could not go forward without the rezoning approved by the Town Board. Plaintiffs-petitioners take the position that in any action subject to SEQRA, that involves a zoning change, the municipal body with authority over the zone change must be the lead agency under SEQRA.

Lead agency is defined in 6 NYCRR 617.2 (v) as "an in-

volved agency principally responsible for carrying out, funding or approving an action". An involved agency "means an agency that has jurisdiction by law to fund, approve or directly undertake an action" (6 NYCRR 617.2 [t]). 6 NYCRR 617.6 provides the method to determine lead agency status. Of particular significance is the method for determining lead agency when more than one involved agency exists.

The regulations and the law (ECL 8-0111 [6]) both recognize situations where more than one agency has approval over an action. ECL 8-0113 grants the Commissioner of Environmental Conservation the authority to adopt rules and regulations implementing SEQRA. The regulations at 6 NYCRR 617.6 (c) provide for agreement among involved agencies as to lead agency status. 6 NYCRR 617.6 (e) provides for resolution by the Commissioner of lead agency status if the involved agencies cannot agree. Nothing in the regulations mandates that any specific agency must be the lead agency when particular types of actions are proposed. The regulations only require that the lead agency be an involved agency.

In all of the cases cited by plaintiffs-petitioners, including *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay* (88 AD2d 484), *Matter of Save the Pine Bush v Planning Bd.* (96 AD2d 986), and the recent Court of Appeals decision in *Matter of Coca-Cola Bottling Co. v Board of Estimate* (72 NY2d 674), the delegation of SEQRA lead agency status was determined to be void. In each of those cases, lead agency status was delegated to a noninvolved agency. The courts have been consistent in determining that consideration of environmental factors cannot be removed from the ambit of the agency responsible for approval of an action. Delegation of lead agency status to a noninvolved agency is improper and will be set aside.

The issue before the court is not determined by any of the cited cases. No case has been cited in which a Planning Board was the lead agency in an action involving a zoning change by a separate municipal body.

This case involves an interpretation of the meaning of the phrase "principally responsible". Plaintiffs-petitioners argue that authority over the zoning change mandates that the Schodack Town Board is principally responsible and therefore must be the lead agency. However, as recited previously, many agencies have approval authority over various portions of this project. Denial by any one of the involved agencies may

defeat the project. The meaning of "principal responsibility" is not as clear as plaintiffs-petitioners argue.

This court views "principal responsibility" as meaning substantial authority over significant portions of the project. Principal responsibility is not limited to any one factor, but the project must be viewed in its entirety. Each case must be considered upon its own facts and circumstances. The authority of each involved agency must be weighed against the authority of every other involved agency.

The phrase "principal responsibility" does have meaning. In a given situation, designation of lead agency status, even by agreement of the involved agencies, may be voided by a court. A lead agency must meet the definition set forth herein. With all of these considerations in mind and considering the various approvals required by the Planning Board, the court determines that designation of lead agency status by the Schodack Planning Board with the agreement of the other involved agencies was proper. The first cause of action is dismissed.

### SECOND CAUSE OF ACTION

Plaintiffs-petitioners assert that the draft and final environmental impact statements fail to take a "hard look" at adverse impacts including traffic, noise and water usage. The claim is also made that a supplemental environmental impact statement (EIS) is required because of newly discovered information about the noise level. The claim is made that the draft environmental impact statement (DEIS) included information about refrigeration noise and not truck traffic noise. It is claimed that 1,800 truck trips will be made every 24-hour period when the project is fully completed. It is this newly discovered evidence that would require a supplemental EIS (6 NYCRR 617.8 [g]), according to plaintiffs-petitioners.

In reviewing the draft EIS and in particular appendix 10, it is clear that the draft EIS identified truck traffic as a noise source along with the refrigeration noise. The record also reveals extensive public comment on the impact of noise at the public hearing. Plaintiffs-petitioners also retained an engineer who submitted written comments concerning the noise level. These comments were addressed in the final EIS. The final EIS also contains more detailed noise studies.

Plaintiffs-petitioners rely upon *Matter of Jackson v New York State Urban Dev. Corp.* (67 NY2d 400) to support the

assertion that a supplemental EIS is required. That case involved modifications of a project by eliminating 100,000 square feet of office space, adding two cinemas, increasing the number of hotel rooms from 550 to 750, increasing retail space from 38,000 to 60,000 square feet and increasing on-site parking from 100 to 125 spaces. The modifications were made after the final EIS was issued. The court concluded that the agency took a hard look at the modifications and that the agency determined that a supplemental EIS was not required. The court upheld that determination.

*Jackson (supra)* was decided prior to the adoption of 6 NYCRR 617.8 (g). Plaintiffs-petitioners also rely upon *Webster Assocs. v Town of Webster* (59 NY2d 220). In that case, the court *(supra,* at 228) determined that "omission of a required item from a draft EIS cannot be cured simply by including the item in the final EIS." Reliance upon that case is misplaced as the noise issue was addressed in the draft EIS in the case now before the court.

One of the first cases to review the adequacy of an agency determination was *H.O.M.E.S. v New York State Urban Dev. Corp.* (69 AD2d 222). In that case the court set forth the standard subsequently known as the "hard look" test. The cases following *H.O.M.E.S.,* such as *Jackson* and *Webster Assocs. (supra),* provide additional guidance in the meaning of "hard look". A reasoned elaboration of the basis for the determination is required *(see, Aldrich v Pattison,* 107 AD2d 258). Not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before a final EIS will satisfy the substantive requirements of SEQRA *(see, Matter of Environmental Defense Fund v Flacke,* 96 AD2d 862).

The noise issue was raised in the draft EIS, oral and written public comments were received on the issue, additional studies were included in appendix 22 of the final EIS. The Planning Board made specific findings relative to noise after considering all the documents and after recommendation by its own consulting engineering firm. It is clear that the Planning Board took a "hard look" at the noise issue. The plaintiffs-petitioners may disagree with the results of the noise study, but this court is bound by a standard of review applicable to article 78 proceedings. The substantive determination may be set aside only if it is arbitrary, capricious or unsupported by substantial evidence *(Town of Hempstead v Flacke,* 82 AD2d 183). There is substantial evidence in the record to support

the Planning Board's findings relative to the traffic noise and water usage. The second cause of action is without merit and is dismissed.

### THIRD CAUSE OF ACTION

Plaintiffs-petitioners assert that the EIS fails to take a "hard look" at the cumulative impacts. The claim is made that Hannaford Brothers Co. intends to open 23 retail stores in the area and the EIS should include both the impact of the warehouse and the retail stores. It is claimed that the draft and final EIS are improperly segmented in violation of 6 NYCRR 617.11 (c) (6) and 617.3 (k). It is also asserted that the alternatives to the proposed action are inadequate in that only one alternate site is discussed.

The draft EIS considered alternate development of the project site including uses allowable pursuant to the existing zoning law of the town. The draft EIS included a discussion of a no-action alternative and discussion of an alternate site approximately 1½ miles from the project site.

It is clear from the draft EIS that Hannaford Brothers Co. intends to build and operate a warehouse facility along with 23 retail supermarkets. This is all part of its long-range plan. The regulations at 6 NYCRR 617.11 (b) require the lead agency to consider reasonably related long-term, short-term and cumulative effects. The lead agency has considered these effects as they relate to the warehouse site. The size of the building and the number of truck trips in and out of the warehouse are obviously related to the number of retail stores to be served by the facility. To require the draft EIS to include the environmental effects of each of those 23 individual stores (most of which sites have not been selected at this time) is beyond the scope of 6 NYCRR 617.11 (b). Each of the 23 retail stores will be subjected to its own SEQRA review process by whatever agency must approve its location.

Segmented review as contained in 6 NYCRR 617.3 (k) refers to a set of activities or steps contained in one action. It is one action that is being considered in this matter, the construction and operation of a distribution facility. All of the activities or steps in that action are discussed in the draft and final EIS. Plaintiffs-petitioners assert that failure to include the effects of the 23 retail stores results in an improper segmented review. The establishment of each of those 23 retail stores is a separate action requiring its own SEQRA review process. The assertion that there is segmented review is without merit.

The regulations at 6 NYCRR 617.14 (f) (5) set forth the requirements for alternatives to the proposed action that must be included in the draft EIS. The regulations require an evaluation of "the range of reasonable alternatives to the action which are feasible, considering the objectives and capabilities of the project sponsor." In addition, the regulations only require consideration of the no-action alternative; alternate site consideration is permissive and for private applicants site alternatives "may be limited to parcels owned by, or under option to, a private applicant" (6 NYCRR 617.14 [f] [5]). "It would be unrealistic, and, indeed, onerous to impose upon private developers the obligation to acquire alternative sites or options to purchase them and then submit all of the sites to the lead agency for review and selection. A private corporation does not have eminent domain power to permit it the flexibility of choice which is available to a municipality" *(Horn v International Business Machs. Corp.,* 110 AD2d 87, 95).

In the case now before the court, one alternative site is identified and discussion of why it was not suitable is contained in the draft EIS. The requirements of the regulations have been met. The lead agency made specific findings concerning the alternatives and there is substantial evidence to support such findings. The third cause of action is dismissed.

### FOURTH CAUSE OF ACTION

Plaintiffs-petitioners assert that notice of a public hearing on the draft EIS was not published 14 days in advance of the public hearing as required by 6 NYCRR 617.8 (d). Attached to the record of proceedings is a copy of an affidavit of publication of a notice of public hearing. Publication in the Greenbush Area News occurred on May 6, 1988 and the hearing was held on May 19, 1988. Also attached to the record of proceedings is a copy of the notice of completion of draft EIS dated May 2, 1988. The notice also contains the date and place of the public hearing to be held on the accepted draft EIS.

The record and final EIS reveal that some of the plaintiffs-petitioners made oral comments at the public hearing. The final EIS further reveals that written comments were received from various organizations and individuals. In addition, plaintiffs-petitioners' engineering expert submitted his noise analysis on July 27, 1988, well after the public comment period expired. Nonetheless, the lead agency considered the noise analysis and included specific findings related to the noise analysis in its approval.

The regulations at 6 NYCRR 617.8 (d) provide for an optional public hearing on a draft EIS. If a hearing is to be held, publication of a notice must occur 14 days in advance. In this case, the publication occurred 13 days in advance. No one raised the issue of insufficient notice prior to commencement of this proceeding. Petitioners actively participated in the administrative process raising many issues. The intent of SEQRA is to obtain public comment on proposed actions. Certainly that intent was accomplished in this case. Plaintiffs-petitioners' failure to object in a timely fashion cannot be ignored. The court in *Matter of Jackson v New York State Urban Dev. Corp.* (67 NY2d 400, 427, *supra*) said, "The EIS process is designed as a cooperative venture, the intent being that an agency have the benefit of public comment before issuing a FEIS [final environmental impact statement] and approving a project; permitting a party to raise a new issue after issuance of the FEIS or approval of the action has the potential for turning cooperation into ambush".

Considering all of the factors set forth above pertaining to the hearing and the notice of hearing, the court determines that plaintiffs-petitioners are deemed to have waived any objection to untimely publication. The fourth cause of action is dismissed.

### FIFTH CAUSE OF ACTION

Plaintiffs-petitioners assert that the Rensselaer County Industrial Development Agency (IDA) on June 9, 1988 approved funding of the project in violation of 6 NYCRR 617.9 (c). The claim is that the final approval of funding was made prior to completion of the SEQRA process. Plaintiffs-petitioners seek a declaration that the June 9, 1988 resolution of the IDA is null and void.

Defendant-respondent IDA admits it adopted a resolution on June 9, 1988 but states that it is a preliminary resolution to an actual inducement resolution which is still not final approval. A review of the resolution clearly shows that it is not final approval of funding. Paragraph 3 (A) of the resolution specifically conditions issuance of any bonds upon fulfillment of all SEQRA requirements.

The action taken by the IDA is not final action in violation of 6 NYCRR 617.9 (c) but rather a permissible preliminary step in its funding approval process. The fifth cause of action is dismissed.

SIXTH CAUSE OF ACTION

Plaintiffs-petitioners allege that the special use permit granted by the Planning Board is in violation of the local zoning law. The claim is made that specific setback requirements were not met along with an assertion that noise levels exceed the zoning law maximum. A procedural defect is also alleged in the petition-complaint relating to a failure to give notice of a public hearing on the special use permit to adjoining landowners.

The Zoning Law of the Town of Schodack is a comprehensive local law 130 pages long. The town is divided into various zoning districts. Certain uses are allowed by right in each district and certain uses are allowed only by special permit use in each district. In addition general standards are set forth governing the approval of special permit uses along with specific standards to be complied with for certain special permit uses.

Plaintiffs-petitioners assert that section VI (B) (19) of the Schodack Zoning Law applies to this application. That section is one of the specific standards to be applied to special permit uses granted to a "Bus, truck or railroad freight terminal". It would require a 500-foot setback for the storage of vehicles and a 500-foot setback for the location of any shipping or receiving docks. Setbacks are measured from the boundary of any residential district.

Plaintiffs-petitioners assert that this facility is a freight terminal subject to the 500-foot setback. Defendant-respondent asserts that it is a warehouse not subject to such setback. There does not appear to be much of a practical difference in the operation of the facility. Many trucks will be entering and leaving the premises and loading and unloading goods regardless of whether it is called a warehouse or a freight terminal. The court, however, must consider the local law as it has been adopted.

Section III (A) contains a schedule of uses within each district. The highway commercial district allows, by special permit use, "warehouses" and "truck freight terminal". The manufacturing district allows, by special permit use, a "bus, truck or rail terminal". Section XIII contains 14 pages of definitions but the words "warehouses", "truck freight terminal" or "bus, truck or rail terminal" are not defined. There must, however, be distinctions since each use is identified within separate categories. If they were intended to be the

same, there would be no reason to separately identify each use. The 500-foot setback applies only to "Bus, truck or railroad freight terminal" which is only allowed in a manufacturing district. The 500-foot setback requirement does not apply to a "warehouse" in a highway commercial district.

The Planning Board, in granting the special permit use, made a specific finding that "all setback, area, yard and other bulk area requirements of the H C District will be satisfied by the project as proposed." The Planning Board determined that this facility is a warehouse. Even if it were a freight terminal, as plaintiffs-petitioners argue, the 500-foot setback would not apply since that setback only applies to "Bus, truck or railroad freight terminal" which by the terms of the local law is something different from a "warehouse" or "freight terminal".

Plaintiffs-petitioners also assert a violation of section V (A) (1) which in summary states that the noise intensity at the boundaries of a lot shall not exceed the average noise intensity at the adjoining street. No use shall be permitted if such noise level will exceed the average noise level of adjoining streets.

The Planning Board made specific findings relative to the existing noise level and future noise levels as well as the sources of the noise. The findings were based upon actual readings by professional consultants indicating a current noise level of 65-75 dBA. The Board further found that the refrigerated trailers will generate 55 dBA of sound at the nearest residence and that truck ingress and egress and maneuvering on-site will generate a cumulative addition of no more than 1 dBA. In addition, the Planning Board found that Federal Highway Administration guidelines will not be exceeded. There is substantial evidence in the record to support the Planning Board's determination relative to noise. The court has no power to substitute its judgment for that of the Planning Board as long as the determination is supported by substantial evidence *(Matter of Gronback v Simpkins,* 96 AD2d 1100).

Plaintiffs-petitioners allege that notice was not given to adjoining landowners that a public hearing would be held September 12, 1988 by the Planning Board pertaining to the special permit use application. An affidavit by the Director of Planning for the Town of Schodack states that a notice was

sent to each adjoining property owner. Attached to the record of proceedings are receipts showing delivery of the notices. The assertion contained in the petition-complaint of lack of mail notice is without merit.

The sixth cause of action is dismissed.

### SEVENTH CAUSE OF ACTION

Plaintiffs-petitioners assert that preliminary subdivision plat approval and preliminary site plan approval are null and void because SEQRA has not been complied with. The draft EIS proposed that a parcel of land with 1,300 feet of frontage on Kingman Road was included in the project. The final EIS proposed a change in configuration such that a portion of land along Route 9 is now included in the project. Plaintiffs-petitioners assert that a supplemental EIS is required.

6 NYCRR 617.8 (g) sets forth the requirements for a supplemental EIS. The Planning Board, prior to approval of the preliminary subdivision plat and site plan, made specific findings that the "minor modification to the project configuration has no significant environmental impact. The FEIS (including the DEIS) adequately and fully describes the relevant environmental impacts, potential mitigative measures and alternatives with respect to the project after giving effect to such proposed change and development in the project".

In *Matter of Jackson v New York State Urban Dev. Corp.* (62 NY2d 400, *supra),* significant modifications were made after the final EIS was issued. The court determined that a "hard look" had been taken at the postfinal EIS changes and no supplemental EIS would be required. In the case now before the court, the modifications were made prior to the final EIS and there is substantial evidence in the record to establish that the Planning Board reviewed the modifications relative to any significant adverse environmental effect. The Planning Board determination may be set aside only if it is arbitrary, capricious, or unsupported by substantial evidence *(Town of Hempstead v Flacke,* 82 AD2d 183, *supra).* That is not the case here. The seventh cause of action is without merit and must be dismissed.

All other issues raised by the plaintiffs-petitioners have been considered by the court and are deemed to be without merit.

The defendants-respondents raise various affirmative defenses. In view of the fact that the court has determined that all of the plaintiffs-petitioners' causes of action are dismissed, it is not necessary to rule upon the affirmative defenses.

The petition-complaint is dismissed in its entirety, without costs.