In the Matter of SCHODACK CONCERNED CITIZENS et al., Appellants, v TOWN BOARD OF THE TOWN OF SCHODACK et al., Respondents, and HANNAFORD BROTHERS COMPANY et al., Intervenors-Respondents.

Third Department, July 13, 1989

### APPEARANCES OF COUNSEL

*Lewis B. Oliver* for appellants.

*Whiteman, Osterman & Hanna (Phillip H. Dixon* of counsel), for Town Board of the Town of Schodack and others, respondents.

*Dudley & Associates (David R. Dudley* of counsel), for Rensselaer County Industrial Development Agency, respondent.

*Shanley, Sweeney & Reilly (J. Michael Naughton* of counsel), for intervenors-respondents.

### OPINION OF THE COURT

MERCURE, J.

In March 1988, Hannaford Brothers Company (hereinafter Hannaford) announced its proposal to construct a distribution facility (hereinafter the facility) on a 100-acre parcel near the intersection of U.S. Route 9 and Interstate Route 90 in the Town of Schodack, Rensselaer County. Hannaford subsequently applied to respondent Town Board of the Town of Schodack for a zone change from Residential-Agricultural to Highway-Commercial with respect to 65 acres of the proposed site.* Pursuant to the Town Zoning Ordinance, the Town Board referred the application to respondent Planning Board of the Town of Schodack, which made a preliminary favorable recommendation in April 1988. The Planning Board then notified all involved agencies of its desire to act as "lead agency" for the required review pursuant to the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA). All involved agencies concurring, on April 18, 1988 the Planning Board designated itself lead agency and issued a positive declaration, requiring the preparation of an environmental impact statement (hereinafter EIS).

In late April 1988, the Planning Board received the draft EIS, which indicated that the facility would operate 24 hours a day, 6½ days a week and would service 23 supermarkets in the region, with an estimated 900 trucks in and out of the facility each day. On May 19, 1988, hearings were held by the

---

* The remaining 35 acres were already zoned Highway-Commercial.

Town Board and the Planning Board on the proposed zoning change and SEQRA review. A final EIS was accepted by the Planning Board during July 1988 and, the following month, its findings were adopted, including a determination not to require a supplemental EIS. On August 11, 1988, after making its own SEQRA findings and receiving a favorable Planning Board recommendation, the Town Board granted Hannaford's zoning change application. In September 1988, following public hearings, the Planning Board approved the special use permit and granted preliminary site plan and preliminary subdivision approval. Petitioners, individuals and an unincorporated association opposed to the facility, commenced this litigation, seeking to invalidate the zone change by the Town Board and certain other actions and approvals by the Planning Board and the Rensselaer County Industrial Development Agency (hereinafter RIDA). Supreme Court granted Hannaford's motion to intervene and, after exchange of all pleadings, dismissed the petition (142 Misc 2d 590). This appeal by petitioners ensued.

■ Preliminarily, we reject the argument that the proceeding should have been dismissed because a party served the petition in violation of CPLR 2103 (a). In our view, this violation is a mere irregularity which does not vitiate service (see, Matter of Sullivan v Albany County Bd. of Elections, 77 AD2d 959; McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C2103:1, at 539).

■ We now turn to the substantive issues raised on the appeal. Initially, petitioners claim that the Town Board improperly delegated lead agency authority to the Planning Board (see, Matter of Save the Pine Bush v Planning Bd., 96 AD2d 986, 988, lv denied 61 NY2d 602, appeal dismissed 61 NY2d 668; see also, Matter of Martin v Koppelman, 124 AD2d 24, 27; Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay, 88 AD2d 484, 492-493). The argument here is that SEQRA review was first required in connection with Hannaford's application for a zoning change and that, since only the Town Board was empowered to grant a zoning change and no other agency could act until the zoning change was accomplished, the Town Board was the only entity "principally responsible for carrying out, funding or approving" the proposed action (6 NYCRR 617.2 [v]; ECL 8-0111 [6]; see, Matter of Coca-Cola Bottling Co. v Board of Estimate, 72 NY2d 674, 680). We are not persuaded.

Rezoning was but the first step in the rather intricate

application process (see, Matter of Brew v Hess, 124 AD2d 962, 964-965; Matter of Kirk-Astor Dr. Neighborhood Assn. v Town Bd., 106 AD2d 868, 869, appeal dismissed 66 NY2d 896), and the Planning Board, ultimately required to approve the subdivision application, site plan and special use permit, was clearly an involved agency (see, 6 NYCRR 617.2 [t]). This is particularly so in light of the SEQRA requirement that all potential environmental impacts of a particular project be given coordinated review (see, 6 NYCRR 617.3 [k]). SEQRA's policy, requiring the ultimate decision-maker to consider environmental factors, has not been transgressed here (cf., Matter of Coca-Cola Bottling Co. v Board of Estimate, supra). Accordingly, we cannot say that the designation of the Planning Board as lead agency was by any means irrational (see, Matter of Congdon v Washington County, 130 AD2d 27, 32, lv denied 70 NY2d 610).

■ Next, petitioners contend that the draft EIS failed to address significant adverse impacts relating to noise from trucks driving to and from the facility and that a supplemental EIS was necessary to afford the public an opportunity to comment upon the issue (see, Webster Assocs. v Town of Webster, 59 NY2d 220, 228; Horn v International Business Machs. Corp., 110 AD2d 87, 97, lv denied 67 NY2d 602; 6 NYCRR 617.8 [g] [3]). We disagree. The draft EIS, and in particular Appendix 10, identified truck traffic as a noise source and discussed the fact that the topography of the parcel and the facility itself would tend to lessen its impact. Petitioners' expert submitted a letter challenging the validity of the methods used to determine that the truck noise would be random, and the final EIS responded to these and other comments. That petitioners' expert disagrees with the studies used does not alter this determination, since scientific unanimity need not be achieved (see, Matter of Environmental Defense Fund v Flacke, 96 AD2d 862, 863). Additionally, since there was extensive public comment and discussion on the noise impact from truck traffic during the SEQRA process, the absence of data in the draft EIS is not fatal (see, Horn v International Business Machs. Corp., supra). In evaluating the adequacy of an EIS or an agency's determination not to require a supplemental EIS, a court should not substitute its judgment for that of the agency (see, Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 417, 429-430). Rather, it should only determine whether "the agency identified the relevant areas of environmental concern, took a 'hard

look' at them, and made a 'reasoned elaboration' of the basis for its determination" *(supra,* at 417, citing *Aldrich v Pattison,* 107 AD2d 258, 265). We agree with Supreme Court that the draft EIS was adequate and that the Planning Board took the requisite hard look before determining that no supplemental EIS was required.

■ Petitioners further contend that the draft EIS did not adequately discuss reasonable alternatives to the proposed site. Parenthetically, since this objection was never voiced by petitioners or others during the administrative process, the issue is not now properly before this court for review *(see, Aldrich v Pattison,* 107 AD2d 258, 268-269, *supra).* In any event, no persuasive argument is now put forward in support of the claim. The SEQRA regulations expressly state that discussion of site alternatives in the draft EIS may be limited to parcels owned by or under option to a private applicant (6 NYCRR 617.14 [f] [5]; *see, Horn v International Business Machs. Corp.,* 110 AD2d 87, 95-96, *supra; see also, Webster Assocs. v Town of Webster,* 112 Misc 2d 396, 410-411, *affd* 85 AD2d 882, *revd on other grounds* 59 NY2d 220). Indeed, it would be both onerous and unrealistic to require private developers, lacking the power of eminent domain, to acquire alternative sites or options to purchase them and then submit all of the sites for review *(see, Horn v International Business Machs. Corp., supra).* Thus, we agree with Supreme Court that, under the circumstances present here, the discussion of alternatives in the draft EIS met the "rule of reason" standard upon which the SEQRA statutory and regulatory guidelines are grounded *(supra,* at 94-95).

■ Petitioners' remaining contentions are similarly unpersuasive. The contention that the Planning Board acted in excess of its authority when it issued the special use permit was not raised during the administrative proceedings and, therefore, has been waived *(see, Aldrich v Pattison,* 107 AD2d 258, 268-269, *supra).* Moreover, the Planning Board's interpretation of the zoning ordinance and conclusion that under its terms Hannaford's use constituted a warehouse, not subject to the 500-foot setback, and not a truck terminal is by no means irrational and, thus, beyond the scope of our review *(see, Appelbaum v Deutsch,* 66 NY2d 975, 977; *Matter of Frishman v Schmidt,* 61 NY2d 823, 826). Finally, Supreme Court prop-

erly concluded that RIDA's preliminary inducement resolution was not a final decision to fund and therefore did not violate 6 NYCRR 617.9 (c).

WEISS, J. P., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Order and judgment affirmed, without costs.