■ AMERICAN HOME ASSURANCE COMPANY, as Subrogee of COLLECTORS' GUILD INTERNATIONAL, INC., Appellant, v MORRIS INDUSTRIAL BUILDERS, INC., Respondent.—Order, Supreme Court, New York County (Bruce McM. Wright, J.), entered June 10, 1991, which: (1) granted defendant's motion to set aside a jury verdict in plaintiff's favor, following a traverse hearing, on the issue of service, and dismissed the complaint, and (2) denied as moot defendant's post-trial motion to set aside another jury verdict, after a full trial, in favor of the plaintiff in the amount of $1,200,000.00, is unanimously reversed, to the extent appealed from and as limited by the parties' appellate briefs, on the law and on the facts, motion of defendant to set aside the verdict on the issue of service denied, that verdict and the complaint reinstated, second affirmative defense contained in the answer dismissed, and, the matter remanded to the IAS Court for its consideration and decision of the undecided portion of the defendant's motion to set aside the jury verdict for money damages, without costs.

In 1983, Collectors' Guild International, Inc. (CGI) contracted with Morris Industrial Builders, Inc. (Morris), as general contractor, to construct a commercial building (premises), located at 1625 Bathgate Avenue, Bronx, New York. Thereafter, on or about April 7, 1986, a large quantity of water leaked through the roof of those premises, and caused substantial damage to an inventory of lithographic art work, owned and used by CGI in its mail order business. CGI was paid for its loss by its insurer, American Home Assurance Company (American).

Subsequently, in 1987, American (plaintiff) commenced a subrogation action against Morris (defendant) to recover money damages for the loss sustained by CGI. The complaint alleges, in substance, that defendant's negligence caused the subject water damage, in that it failed to properly seal the roof around the base of a heating, ventilating and air conditioning unit.

Besides defendant, plaintiff named several other parties as co-defendants, and thereafter defendant asserted cross-claims and commenced a third-party action. During the course of the litigation, the claims against all the co-defendants and third-party defendants were dismissed, leaving only defendant Morris.

On March 25, 1991, a trial of this matter commenced, and, since the defendant had raised a jurisdictional defense, contending improper service, the IAS Court interrupted the trial, and directed a traverse hearing before the jury on that issue. Following the receipt of the evidence, and the Court's charge, the jury unanimously found that, although Ms. Maureen Moran (Ms. Moran) was not an agent authorized by appointment or by law to accept service of process on behalf of defendant, she did have the apparent authority to do so.

Thereafter, the trial continued on the merits, resulting in a jury verdict in favor of the plaintiff in the amount of $1,200,000.00.

At the conclusion of the full trial, the defendant moved to set aside the jury verdict in favor of plaintiff on the issue of service, and separately moved to set aside the jury verdict awarding plaintiff damages. The IAS Court consolidated those motions, and, since it granted defendant's motion to set aside the jury verdict on the issue of service, and dismissed the complaint, it denied as moot the other motion to set aside the jury verdict awarding damages. Plaintiff appeals.

Our examination of the record of the traverse hearing indicates that three witnesses testified: Mr. Charles Lester (Mr. Lester), Ms. Moran, and Mr. Robert Morris (Mr. Morris).

Mr. Lester testified, in substance, that he is a resident of New Jersey, he has been serving legal papers for almost 50 years, and, on the afternoon of April 8, 1987, he went to the defendant's offices, where he had served process several years before, located at 535 Secaucus Road, Secaucus, New Jersey, for the purpose of serving process. Further, he stated that, in this instance, as was his standard operating procedure, he entered the premises, announced to the receptionist that he had a summons and complaint to serve, requested her to direct him to the proper person to accept such papers, and she referred him to Ms. Moran, who was pregnant, and Ms. Moran accepted the summons and complaint.

Ms. Moran testified, in substance, that, although she did not specifically recall receiving the papers, she was employed as a secretary by the defendant in April 1987, she was pregnant at that time, and, in that office, it was her practice to receive legal papers, sign for them, and then give them to her superiors.

Mr. Morris testified, in substance, that, in April 1987, he was the Chief Executive Officer of defendant, Ms. Moran was employed as a secretary, and although she was not specifically

authorized to accept the service of process on behalf of the defendant, like all the other secretaries, she commonly signed for legal papers, which she then gave to either him or Mr. Feldman, who was the defendant's Chief Financial Officer.

The Court of Appeals in *Fashion Page v Zurich Ins. Co.* (50 NY2d 265, 272-273 [1980]) discussed the issue of personal service on a corporation, doing business in this State such as defendant, and held, in pertinent part:

"A corporation may appoint an agent to accept service without observing the formalities necessary to 'designate' an agent pursuant to CPLR 318 * * * Notably CPLR 311 (subd 1) does not require that this be done with any particular formality.

"Thus a corporation may assign the task of accepting process and may establish procedures for insuring that the papers are directed to those ultimately responsible for defending its interests. A process server may, of course, always serve the corporate personnel specifically identified in the statute. The corporation however cannot escape the consequences of establishing alternative procedures which it may prefer. In such a case the process server cannot be expected to know the corporation's internal practices. Reliance may be based on the corporate employees to identify the proper person to accept service. In such circumstances, if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained * * *

"In evaluating whether service is to be sustained, the circumstances of the particular case must be weighed".

Applying the legal authority of *Fashion Page v Zurich Ins. Co. (supra)* to the facts of the instant case, indicating that the process server was referred by the defendant's receptionist to Ms. Moran, when he asked the receptionist to direct him to the proper person to accept legal papers, we agree with the traverse jury's verdict that under the law Ms. Moran had apparent authority to accept the summons and complaint on behalf of the defendant. To put it another way, the defendant as a "corporation * * * regularly doing business in the State * * * cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions" *(Fashion Page v Zurich Ins. Co., supra,* at 273).

Although Mr. Lester was not a New York resident, but rather a New Jersey resident, when he served the legal papers

on the defendant in New Jersey, and there is no evidence before us indicating that he was legally authorized to serve legal papers in that State, as required by CPLR 313, we find that this defect, as to residency, is a mere irregularity, since it did not substantially prejudice defendant's rights, and therefore it "shall be disregarded" (CPLR 2001). Significantly, while CPLR 2103 states that a party is not eligible to serve legal papers, Appellate Courts in this State, including this Court, have consistently held that a party's service of legal papers is a mere irregularity and not a jurisdictional defect *(Matter of Kandel v State Div. of Human Rights,* 70 AD2d 817, 818 [1st Dept 1979]; *Matter of Schodack Concerned Citizens v Town Bd.,* 148 AD2d 130, 133 [3d Dept 1989], *lv denied* 75 NY2d 701 [1989]). The irregularity relative to the process server's residence, is considerably less significant, than service by a party.

CPLR 313 requires that service on a non-domiciliary be made by a New York resident. Although appellant attacks the constitutionality of this section, we need not reach the constitutional question, as we have already held the service by a non-resident to be a mere irregularity.

Based upon our legal and factual analysis, *supra,* we find that the IAS Court erred in granting the defendant's motion to set aside the verdict on the issue of service.

We have considered the other contentions of the parties, and find them to be without merit.

Accordingly, we reverse, deny the motion of the defendant to set aside the verdict on the issue of service, reinstate that verdict and the complaint, dismiss the second affirmative defense contained in the answer, and remand to the IAS Court for its consideration and decision of the undecided portion of the defendant's motion to set aside the jury verdict for money damages. Concur—Milonas, J. P., Ellerin, Kupferman, Ross and Rubin, JJ.