■ In the Matter of CITY OF SARATOGA SPRINGS, Appellant, v ZONING BOARD OF APPEALS OF THE TOWN OF WILTON et al., Respondents. [719 NYS2d 178] —Mugglin, J. Appeal from a judgment of the Supreme Court (Nolan, Jr., J.), entered March 28, 2000 in Saratoga County, which, *inter alia*, dismissed petition-

er's application, in a proceeding pursuant to CPLR article 78, to review determinations of respondents Planning Board of the Town of Wilton and/or Zoning Board of Appeals of the Town of Wilton adopting a negative declaration and granting area variances to respondent Saratoga Lodge No. 161, Benevolent and Protective Order of Elks.

This proceeding concerns the proposed construction by respondent Saratoga Lodge No. 161, Benevolent and Protective Order of Elks (hereinafter the Elks Club) of a new lodge on a 4.25-acre tract of land bordering Loughberry Lake in Saratoga County, the principal drinking water reservoir for petitioner. Since that portion of the proposed tract lying in the Town of Wilton, Saratoga County, was not appropriately zoned for construction of the proposed facility, the Elks Club applied to the Wilton Town Board for rezoning. Following the preparation of a draft environmental assessment form, a public hearing and the issuance of a negative declaration pursuant to the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), the requested rezoning was approved.

In August 1999, the Elks Club submitted to respondent Planning Board of the Town of Wilton an application for site plan approval concerning construction of the proposed facility which included connections to petitioner's municipal sewer and water lines. When this application was reviewed by the Planning Board on August 18, 1999, petitioner appeared and for the first time opposed the proposed construction, claiming that since Loughberry Lake was nearing the end of its useful life expectancy and was thereby extremely fragile, the close proximity of the proposed facility to the lake created a significant potential impact on petitioner's supply of drinking water. As the result of petitioner's announcement that it would not allow the Elks Club to connect its new facility to petitioner's municipal sewer and water lines, the Elks Club submitted a revised and amended site plan moving the proposed building an additional 62 feet from the shoreline of Loughberry Lake, relocating parking and storm water retention in excess of 300 feet from the lake shore and incorporating an on-site well and septic system.

The revised site plan required three area variances for which the Elks Club made application to respondent Zoning Board of Appeals of the Town of Wilton (hereinafter the ZBA). The ZBA requested an advisory opinion from the Planning Board on the variance requests. On October 29, 1999, the Elks Club filed an environmental assessment form with the Planning Board which declared itself to be the lead agency under SEQRA. Upon the conclusion of its SEQRA analysis, the Planning Board filed

a negative declaration with the Wilton Town Clerk on December 6, 1999 finding that there were no significant adverse environmental impacts likely associated with the Elks Club project. Based on a favorable recommendation issued by the Planning Board, the ZBA granted the requested area variances and filed such decision with the Town Clerk on December 8, 1999.

This proceeding was commenced pursuant to CPLR article 78 by the filing of a notice of petition and petition on January 6, 2000, alleging four causes of action seeking, *inter alia*, that the negative declaration be nullified, that an environmental impact statement be filed, and that the area variances be set aside as premature until a comprehensive environmental review of the proposal had been completed. The Elks Club and respondent Exalted Ruler B.P.O.E. Lodge No. 161 (hereinafter collectively referred to as the Elks) filed a counterclaim to the petition seeking, *inter alia*, money damages for counsel fees, litigation expenses and additional construction costs. Petitioner, in turn, filed a counterclaim against the Elks seeking, *inter alia*, relief under Civil Rights Law §§ 70-a and 76-a. Finding that the first and third causes of action asserted in the petition were barred by the Statute of Limitations and that the second and fourth causes of action were without merit, Supreme Court dismissed the petition in its entirety, as well as the counterclaims of petitioner and the Elks. Petitioner now appeals.

First, we must address whether Supreme Court correctly determined that petitioner's first and third causes of action were time barred. Petitioner contends that its SEQRA claims asserted in the first and third causes of action are timely since the proceeding was commenced within 30 days of the variance approvals by the ZBA. We reject petitioner's argument and find that Supreme Court correctly determined these claims to be time barred.

A person aggrieved by a decision of any board of a town must seek judicial review by filing a proceeding under CPLR article 78 within 30 days of the filing of the board's decision in the office of the Town Clerk (*see,* Town Law § 267-c [1]; § 274-a [11]). " 'In order to determine what event triggered the running of the Statute of Limitations, we must first ascertain what administrative decision petitioner is actually seeking to review and then find the point when that decision became final and binding and thus had an impact upon petitioner' " (*Matter of Haggerty v Planning Bd.*, 166 AD2d 791, 792, quoting *Matter of Monteiro v Town of Colonie*, 158 AD2d 246, 249). We held in

*Matter of McNeill v Town Bd.* (260 AD2d 829, *lv denied* 93 NY2d 812) that if the challenged action relates to SEQRA review, the Statute of Limitations is triggered by the filing of the decision which embodies the final determination of SEQRA issues.

In our view, the first and third causes of action asserted by petitioner seek review of the SEQRA determinations made by the Planning Board. Those determinations became final and binding and had impact on petitioner when the negative declaration was filed on December 6, 1999, making petitioner's CPLR article 78 proceeding filed January 6, 2000 untimely. The SEQRA determination of the Planning Board was discrete and final, not a part of or instrumental to the resolution by the ZBA of the area variance requests. Further, its advisory opinion to the ZBA with respect to its area variance applications did not render the SEQRA determination an "intermediate decision." Instead, it constituted the final action by the Planning Board in terms of the site plan review which could impact the environment and did impact petitioner.

Turning to Supreme Court's dismissal of the second and fourth causes of action on the merits, we find no error with respect to the ZBA's grant of the area variances requested by the Elks. Town Law § 267-b (3) requires the ZBA, in resolving requests for area variances, to balance the proposed benefit to the applicant against the potential detriment to the health, safety and welfare of the neighborhood or community (*see, Matter of Sasso v Osgood,* 86 NY2d 374, 384). In applying this test, the statute lists specific factors which must be considered and carefully weighed by the ZBA (*see,* Town Law § 267-b [3] [b]). Our review of the record demonstrates clearly that the ZBA, in reaching its determination with respect to the separate area variances requested, properly applied the balancing test and appropriately considered the statutory factors. Notably, the arguments of petitioner with respect to these area variances focus primarily on the granting of the parking space variance, contending that the necessity for this variance was self-created. We conclude that the necessity for a parking variance was precipitated mainly by petitioner's concern regarding the setback distance of the facility from Loughberry Lake and its refusal to allow the Elks access to its municipal sewer and water lines.

With respect to the dismissals of its counterclaims, petitioner's arguments are premised upon its belief that since the Elks are a public applicant or permittee, petitioner may counterclaim for damages under the Civil Rights Law. Clearly, as a municipality, petitioner is not a "public applicant or permittee"

and, thus, is not authorized to bring any claim for damages under this statute (*see*, Civil Rights Law § 76-a [1] [a], [b]). Civil Rights Law §§ 70-a and 76-a were enacted to protect citizen activists from law suits brought against them in retaliation for their public advocacy (*see*, *Harfenes v Sea Gate Assn.*, 167 Misc 2d 647, 648) and is not intended to encompass the circumstances presented herein.

Finally, there is no merit to petitioner's contention that Supreme Court improperly excluded a reply containing two engineering reports commissioned by petitioner. Although petitioner's representative made reference to these reports before the Planning Board, they were never provided to the Planning Board or to the ZBA for their consideration during the decision-making process. A court's review of administrative actions is limited to the record made before the agency (*see*, *Matter of Levine v New York State Liq. Auth.*, 23 NY2d 863, 864).

We have reviewed the remaining contentions of petitioner and find them unavailing.

Cardona, P. J., Crew III, Rose and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.