In the Matter of GAIL G. ANDERSON, Appellant, v MICHAEL LENZ, as Mayor of the City of Saratoga Springs and as Chairperson of the Saratoga Springs City Council, et al., Respondents. [811 NYS2d 210]—

Crew III, J.P. Appeal from a judgment of the Supreme Court

(Nolan, Jr., J.), entered May 23, 2005 in Saratoga County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent City Council of the City of Saratoga Springs rezoning certain property.

Petitioner owns approximately 44 acres of land in the City of Saratoga Springs, Saratoga County. The property in question lies within what formerly was the Southern Weibel Avenue District (hereinafter SWAD), an area zoned primarily for office and high-density residential uses. In October 2004, when petitioner's property still was zoned SWAD, petitioner applied for a special use permit to construct a project known as Spring Run Village. Petitioner's application, which was revised in December 2004, called for the development of 300 residential units, 60 of which would be workforce or low-income housing.

Thereafter, in February 2005, respondent City Council of the City of Saratoga Springs (hereinafter respondent) enacted an ordinance rezoning the SWAD to Rural Residential-1, the latter of which permits single-family residences on lots with at least two acres of land. Hence, respondent's zoning decision effectively put an end to petitioner's high-density residential proposal.

Petitioner thereafter commenced this proceeding pursuant to CPLR article 78 challenging respondent's determination, contending that respondent failed to discharge its obligations under the State Environmental Quality Review Act (hereinafter SEQRA; *see* ECL art 8). Specifically, petitioner asserted that respondent failed to appreciate the potentially significant impact that the alleged loss of low-income housing would have on the environment and, hence, erred in issuing a negative declaration for the proposed zoning change. Supreme Court dismissed petitioner's application, finding that respondent took the requisite "hard look" at the issue of affordable housing within the area in question, and this appeal by petitioner ensued.

We affirm. We begin by restating the well-settled rule that our review of respondent's SEQRA determination "is limited to whether the determination was made in accordance with lawful procedure and whether, substantively, the determination 'was affected by an error of law or was arbitrary and capricious or an abuse of discretion' " (*Akpan v Koch*, 75 NY2d 561, 570 [1990], quoting CPLR 7803 [3]). Respondent's obligations as lead agency are equally clear—namely, to identify the relevant areas of environmental concern, take a hard look at such areas and make a reasoned elaboration of the basis for its determination (*see Matter of Jackson v New York State Urban Dev. Corp.*, 67

NY2d 400, 417 [1986]). Assuming respondent fulfills its obligations in that regard, our inquiry is at an end, for it is not the role of this Court to second-guess respondent's determination and/or substitute our judgment for the conclusions it has reached (see Matter of Merson v McNally, 90 NY2d 742, 752 [1997]; Akpan v Koch, supra at 570).

Here, respondent recognized that the proposed rezoning constituted a type I action under SEQRA and retained a planning consultant to assist in the preparation of the required long environment assessment form (hereinafter EAF). Although part II of the EAF did not identify any environmental impacts stemming from the proposed zoning change, part III of the EAF nonetheless extensively discussed a myriad of issues, among them the zoning history of the area in question, the numerous comprehensive planning efforts and policies undertaken by the City of Saratoga Springs, including a report from respondent Mayor's Affordable Housing Task Force, and, specifically, the need for affordable housing in the city as a whole. In assessing the impact of the proposed zoning change, respondent noted: "While the [Rural Residential-1] zoning district is a low-density zoning district geared primarily for single-family residences, it does allow a percentage of the housing units to be produced as two-family units. In addition, density bonuses are allowed of up to 20% additional units under the conservation subdivision regulations if the required open space is made accessible to the public. While this action may limit future options to create additional affordable housing within this subject area, this impact is limited and not a significant adverse impact." Respondent went on to acknowledge the "tradeoff" being made by opting for a zoning classification that afforded greater open space protection. Respondent noted, however, that "other opportunities remain in the city for locating new, infill affordable housing and for renovating existing housing stock for future affordable housing. Further, parties interested in limiting their profit on a housing development could still propose affordable housing in this subject area working within the density constraints."

In addition to the analysis contained in the EAF, even a cursory review of the relevant meeting minutes and the comments submitted by respondent's various members reveals that respondent was well aware of the need for affordable housing within the city and took a hard look at the impact the proposed rezoning would have in that regard. On this point, it must be remembered that the zoning change at issue did not result in the actual loss of any affordable housing units and no low-income families were displaced. More to the point, although the

availability of affordable housing plainly is an issue for the city, respondent need not focus on that issue to the exclusion of all other legitimate planning concerns (*see Matter of Maple Lane Assoc. v Town of Livingston*, 197 AD2d 817, 819 [1993]). In short, based upon our review of the record as a whole, we cannot say that respondent failed to discharge its obligations under SEQRA or that it erred in issuing a negative declaration for the underlying zoning change. The mere fact that respondent's analysis apparently fell short of petitioner's expectations does not render it defective for purposes of SEQRA. We have examined petitioner's remaining contentions and find them to be without merit.

Peters, Lahtinen and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.