■ In the Matter of CHRISTOPHER H. REED et al., Appellants-Respondents, v VILLAGE OF PHILMONT PLANNING BOARD et al., Respondents-Appellants, and PHILMONT VENTURES, LLC, et al., Respondents. [825 NYS2d 284]—

Crew III, J. Cross appeals from a judgment of the Supreme Court (Hummel, J.), entered October 6, 2005 in Columbia County, which, inter alia, dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Village of Philmont Planning Board granting approval to further develop certain real property.

In 1988, respondent Village of Philmont Board of Trustees (hereinafter Village Board) issued a negative declaration for purposes of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) for the Summit Street Project, a residential development located on a 56.2-acre parcel in the Village of Philmont, Columbia County. Shortly thereafter, the Village adopted a comprehensive zoning code that, in part, was in conflict with the proposed project. Litigation ensued and, ultimately, the developer and the Village entered into a settlement agreement in 1991, pursuant to the terms of which the developer agreed to, among other things, grant the Village a conservation easement with respect to 10.92 acres of land on the property. Phase I of the project then began and 14 new homes were completed.

Years passed and, in 2004, respondent Philmont Ventures, LLC (hereinafter Ventures), the developer's successor in interest, submitted an application to respondent Village of Philmont Planning Board for approval of its plan to commence phase II of the project. Ventures acknowledged that it must comply with certain regulations concerning storm water treatment and, to that end, proposed installing three storm water detention ponds that, of necessity, had to be located within the conservation easement. Accordingly, Ventures also approached the Village Board to determine whether it would be willing to amend the conservation easement to permit the installation of the detention ponds. A lengthy examination of Ventures' respective applications ensued, during the course of which both the phase II application and the application to amend the conservation easement were subjected to a coordinated review by the Planning Board and the Village Board (hereinafter collectively referred to as respondents). Following public hearings, review of the full environmental assessment form (hereinafter EAF) and numerous responses by Ventures' engineering firm, negative declarations were issued, the phase II application was granted prelimi-

nary approval and the conservation easement was amended to allow for the construction of two small detention ponds therein.

Petitioners, all of whom own property in the Village, thereafter commenced this proceeding seeking to, among other things, annul the underlying negative declarations, enjoin respondents from granting approval or amending the conservation easement prior to complying with SEQRA and declaring that a full environmental impact statement was required. Although Supreme Court found that petitioners had standing to commence this proceeding, it dismissed the petition on the merits, concluding that respondents complied with the mandates of SEQRA. Petitioners now appeal and respondents cross-appeal from that portion of Supreme Court's judgment holding that petitioners had standing to bring this proceeding.

Turning first to the issue of standing, even accepting respondents' contention that certain of petitioners did not establish that they suffered an environmental injury different in kind or degree from the public at large (see *Matter of Heritage Coalition v City of Ithaca Planning & Dev. Bd.*, 228 AD2d 862, 864 [1996], *lvs denied* 88 NY2d 809 [1996]; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 769 [1991]), it is readily apparent that, at the very least, both petitioner Leonard W. Miller, Jr., who resides within the subject subdivision, and petitioner Ursula Lehnhardt, whose property is immediately adjacent to the subdivision property, have standing to bring this proceeding and, as such, Supreme Court did not err in reaching the merits.

Addressing next the Village Board's decision to issue a negative declaration and amend the conservation easement to include the two detention ponds at issue, even a cursory review of the voluminous record before us reveals that the Village Board indeed identified the relevant environmental concerns, took the requisite "hard look" at those issues and made a reasoned elaboration as to the basis for its determination (see *Matter of Anderson v Lenz*, 27 AD3d 942, 943 [2006], *lv denied* 7 NY3d 702 [2006]). In addition to conducting a public hearing in this matter, the Village Board undertook a site visit, painstakingly reviewed the full EAF and examined, among other things, panoramic photographs of the area and digital renderings of the site as fully constructed, and considered an alternative design proposal regarding the location of the detention ponds. In conjunction therewith, the Village Board entered into negotiations with Ventures, as the result of which Ventures offered to transfer title to the Village of not only the 10.92 acres constituting the conservation easement but also an additional 20 acres of

land, together with a recreational fee in the amount of $50,000. Under such circumstances, we are of the view that the Village Board more than fulfilled its obligations under SEQRA and, as such, our inquiry is at an end (*see id.* at 944).

We reach a similar conclusion regarding the determination made by the Planning Board. To be sure, the record does not contain a detailed transcript of the Planning Board's deliberations, and there is no question that our review of this matter would have been aided by such a document. However, it is apparent from the various Planning Board meeting minutes contained in the record that the Planning Board conducted a public hearing on the underlying proposal, received and reviewed comments from both the Village's and Ventures' consulting engineers and considered, among other things, the impact on existing traffic patterns. It is equally apparent from a review of those meeting minutes that the Planning Board took its time in evaluating Ventures' proposal and reviewed the full EAF. Simply put, although the text of the Planning Board's negative declaration was rather terse, we nonetheless are satisfied that the Planning Board complied with SEQRA and, as such, its determination in this regard will not be disturbed. Petitioners' remaining contentions, to the extent they are properly before us, have been examined and found to be lacking in merit.

Mercure, J.P., Spain, Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.