In the Matter of NORTH COUNTRY CITIZENS FOR RESPONSIBLE GROWTH, INC., Petitioner, and CHARLES S. DUNCAN, SR. et al., Appellants, v TOWN OF POTSDAM PLANNING BOARD et al., Respondents. [834 NYS2d 568]—

Mugglin, J. Appeal from a judgment of the Supreme Court

(Dawson, J.), entered March 22, 2006 in Essex County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to review determinations of respondents Town of Potsdam Planning Board and/or Town of Potsdam Zoning Board of Appeals granting an area variance and approval for the construction of a Wal-Mart Supercenter.

In May 2004, respondent Wal-Mart Stores, Inc. submitted an application to respondent Town of Potsdam Planning Board for a building permit to construct a Wal-Mart Supercenter on State Route 11 in the Town of Potsdam, St. Lawrence County. According to the application, which included a draft environmental impact statement, the Wal-Mart Supercenter would consist of a retail store, garden center, tire and lube garage, gas station and an approximately 900-space parking lot. Under the Town of Potsdam Zoning Code, one portion of the proposed site is in a Community Center (C-C) zoning district and the rest is in a Residential-Agricultural (R-A) zoning district; in addition, the entire property is within a Planned Development (P-D) overlay district. Following the submission of Wal-Mart's building permit application, the Planning Board resolved to serve as the lead agency for purposes of a type I review pursuant to the State Environmental Quality Review Act (see ECL art 8 [hereinafter SEQRA]). The extensive review process, which was completed over 17 months, included public comments, additional testing, detailed reviews by respondents' attorneys and experts, and comments from various agencies. In September 2005, the Planning Board unanimously accepted the proposed final environmental impact statement. The Planning Board subsequently issued its SEQRA findings, which were filed with the Town of Potsdam Town Clerk on October 5, 2005.

In February 2005, while the SEQRA review was ongoing, Wal-Mart submitted a request for an area variance to respondent Town of Potsdam Zoning Board of Appeals (hereinafter ZBA). The variance was needed because Wal-Mart's proposed site plan situated its tire and lube garage 146 feet from the property line of petitioners Charles S. Duncan Sr. and Evalyn C. Duncan (hereinafter collectively referred to as the individual petitioners), and the Town of Potsdam Zoning Code requires a 200-foot setback. On October 25, 2005, following two public hearings, the ZBA adopted a resolution unanimously approving the area variance. On October 26, 2005, the Planning Board determined that the site plan was consistent with the provisions of the Town of Potsdam Zoning Code and unanimously resolved to approve Wal-Mart's site plan subject to certain stated conditions.

The Planning Board found, among other things, that Wal-Mart's proposed use was an appropriate use in the relevant zoning districts. In November 2005, the individual petitioners and another commenced this combined CPLR article 78 proceeding and declaratory judgment action contending, among other things, that determinations by the Planning Board and the ZBA were arbitrary and capricious, and that the Planning Board failed to comply with certain SEQRA requirements. Following oral argument, Supreme Court dismissed the petition. The individual petitioners now appeal.

First, the individual petitioners contend that the Planning Board's approval of the Wal-Mart Supercenter should be annulled as irrational, arbitrary and capricious because the Wal-Mart Supercenter is neither an appropriate use in the C-C and R-A zoning districts, nor in the P-D overlay district. We accord great deference to a planning board's interpretation of a zoning ordinance and "its determination will be upheld if it has a rational basis and is supported by substantial evidence" (*Matter of Committee to Protect Overlook, Inc. v Town of Woodstock Zoning Bd. of Appeals*, 24 AD3d 1103, 1104-1105 [2005], *lv denied* 6 NY3d 714 [2006]; *see Appelbaum v Deutsch*, 66 NY2d 975, 977-978 [1985]; *Matter of Kantor v Olsen*, 9 AD3d 814, 815 [2004]). Also, "[w]here substantial evidence exists, a court may not substitute its own judgment for that of the board, even if such a contrary determination is itself supported by the record" (*Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead*, 98 NY2d 190, 196 [2002]).

Pursuant to Town of Potsdam Zoning Code § 110-7 (C) (8) (c), "[u]ses otherwise permitted in the R-A and C-C districts and uses permitted by special exception in the R-A and C-C districts as well as those uses deemed appropriate by the Town Planning Board . . . may be permitted in the P-D overlay district." Retail stores are a permitted use in a C-C district (*see* Town of Potsdam Zoning Code § 110-7 [C] [4] [b] [8]), while parking lots, gasoline stations and garages are permitted in a C-C district by special exception (*see* Town of Potsdam Zoning Code § 110-7 [C] [4] [c] [5], [18]). Accordingly, the Planning Board deemed Wal-Mart's proposed use as an "appropriate use[ ] within the P-D District . . . in accordance with the review procedures outlined in [Town of Potsdam Zoning Code § 110-7 (C) (8) (d)]." The use was deemed appropriate upon a finding that the Wal-Mart site plan was "in harmony with the orderly development of the district" and was not "more objectionable to nearby properties . . . than would be the operations of any permitted use" (Town of Potsdam Zoning Code § 110-8 [A] [4] [a], [b]). Also, the Wal-

Mart Supercenter proposal met the purpose of a P-D overlay district, which is "[t]o encourage planned development in the transportation corridor between Route 11 and the Conrail Railroad between Canton and Potsdam" (Town of Potsdam Zoning Code § 110-7 [C] [8] [a]).

Indeed, the Town of Potsdam's Community Development Strategy, published in 2004, specifically stated that "[r]etail development of *all sizes* should be encouraged in the highway corridor areas" [emphasis added], which includes the location of the proposed Wal-Mart. Although the Wal-Mart site plan certainly involves more intense uses than those currently in the area, there was nonetheless substantial evidence to support a finding that such use was permitted within a P-D overlay district. While a contrary determination may well have been supported by this record, there was a rational basis supporting the Planning Board's determination, which, therefore, must be upheld (*see Matter of Retail Prop. Trust v Board of Zoning Appeals of Town of Hempstead, supra* at 196).

The individual petitioners next contend that the ZBA's approval of Wal-Mart's application for an area variance should be annulled as arbitrary and capricious on the basis that the ZBA failed to properly consider the factors for granting a variance as delineated in Town Law § 267-b. "In making its determination whether to grant an area variance, a zoning board of appeals is required, pursuant to Town Law § 267-b (3), to engage in a balancing test, weighing the benefit to the applicant against the detriment to the health, safety and welfare of the neighborhood or community if the variance is granted" (*Matter of Ifrah v Utschig*, 98 NY2d 304, 307 [2002] [citation omitted]; *see Matter of Sasso v Osgood*, 86 NY2d 374, 382, 384 [1995]; *Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush*, 16 AD3d 715, 724 [2005]). In applying this balancing test, the ZBA must consider the five statutory factors (*see* Town Law § 267-b [3] [b]). The ZBA's conclusion is entitled to considerable deference "if it is found to have a rational basis and is supported by substantial evidence in the record" (*Matter of Johnson v Town of Queensbury Zoning Bd. of Appeals*, 8 AD3d 741, 742 [2004]; *see Matter of Defreestville Area Neighborhood Assn., Inc. v Planning Bd. of Town of N. Greenbush, supra* at 723-724).

In deciding whether to issue the area variance, the ZBA addressed the five specific criteria. First, the ZBA found that the "character of the neighborhood will not be adversely affected by a variance of 54 feet from the required setback of 200 feet from a residential property line." This conclusion was supported by

evidence that, while the garage would be 146 feet from the property line, it was approximately 1,260 feet from the individual petitioners' residence. In addition, the services to be provided at the garage are limited in scope and Wal-Mart is required to install visual and noise buffers for the adjacent residential property. Also, the Planning Board took measures to ensure that no "exterior storage of dismantled vehicles, vehicle parts or disabled vehicles shall be permitted." Second, the ZBA concluded that there were "no feasible or practicable alternatives" to the location of the garage. This conclusion was supported by the Planning Board's SEQRA findings, wherein it found that the proposed site configuration maximizes traffic safety and minimizes environmental impact. Any altered configuration would therefore diminish the environmental advantages of the proposed site configuration.

Third, the ZBA concluded that the area variance was insubstantial. This conclusion was supported by the calculation showing that the proposed setback is 146 feet, which is 73% of the required 200-foot setback (compare Matter of Ifrah v Utschig, supra at 309). In addition, the tire and lube garage is relatively small in size, and the services it provides would be indoors and limited to normal working hours. The proposed visual and noise buffers, serving to limit any adverse impact, also supported a finding that the variance is insubstantial. Fourth, the ZBA concluded that the variance would not have an adverse impact on the physical or environmental conditions in the neighborhood or district. This conclusion was amply supported by the SEQRA findings statement. The ZBA concurred in the Planning Board's statement that "the overall site plan reflects a careful effort to minimize adverse physical and environmental impacts to the maximum extent practicable." Fifth, the ZBA acknowledged that the alleged difficulty was self-created. "Nevertheless, [Town Law § 267-b (3) (b) (5)] expressly states that the fact that the applicant's difficulty was self-created does not necessarily preclude the granting of the area variance" (Matter of Sasso v Osgood, supra at 385 [citation omitted]). Finally, it is noted that the construction and completion of the Wal-Mart Supercenter will result in substantial benefits to the Town of Potsdam, including local availability of economical retail consumer products, property tax revenues and job creation. Under these circumstances, the ZBA's conclusions were supported by substantial evidence in the record and, accordingly, its determination was not irrational, arbitrary or capricious.

The individual petitioners lastly contend that the Planning Board failed to comply with certain SEQRA requirements. As a

threshold matter, the individual petitioners contest Supreme Court's conclusion that the 30-day statute of limitations to challenge a planning board decision was triggered on October 5, 2005, and argue that the statute of limitations period should not have commenced until October 26, 2005, when the Planning Board approved Wal-Mart's overall site plan. With respect to this argument, the first inquiry must be when did the individual petitioners suffer "a concrete injury not amenable to further administrative review and corrective action" (*Matter of Eadie v Town Bd. of Town of N. Greenbush*, 7 NY3d 306, 316 [2006] [internal quotation marks and citation omitted]) because the 30-day statute of limitations (*see* Town Law § 267-c [1]; § 274-a [11]) commences on the day that a planning board decision inflicting such injury is filed in a town clerk's office.

Here, insofar as it was the same agency that made the SEQRA determination and the site plan approval—both steps in an integrated process, we agree with the individual petitioners that they did not suffer the concrete injury until the site plan was approved (*see Matter of Eadie v Town Bd. of Town of N. Greenbush, supra* at 317; *see also Matter of Save the Pine Bush v City of Albany*, 70 NY2d 193, 200 [1987]). Those cases in which the SEQRA determination was made by one agency, and review of the action of a second agency or legislative body is thereafter sought, are distinguishable (*see Matter of Eadie v Town Bd. of Town of N. Greenbush, supra* at 317; *see also Matter of City of Saratoga Springs v Zoning Bd. of Appeals of Town of Wilton*, 279 AD2d 756 [2001]; *Matter of McNeill v Town Bd. of Town of Ithaca*, 260 AD2d 829 [1999], *lv denied* 93 NY2d 812 [1999]).

Nevertheless, turning to the merits, we disagree with the individual petitioners' contentions that the Planning Board failed to take a "hard look" and make a "reasoned elaboration" with respect to population concentration and community character (*see* ECL 8-0105 [6]). When making a SEQRA determination, an agency must take a hard look at the potential environmental impacts and make a reasoned elaboration of the basis of its findings (*see Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 416-417 [1986]; *Matter of Reed v Village of Philmont Planning Bd.*, 34 AD3d 1034, 1036 [2006], *lv denied* 8 NY3d 807 [2007]). When reviewing such a determination, "it is not the role of the courts to weigh the desirability of any [SEQRA] action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively" (*Matter of Jackson v New York State Urban Dev. Corp., supra* at 416).

In the present case, the Planning Board conducted an

extensive 17-month review process; it included public comments, additional testing, expert reviews and comments from various agencies. The final environmental impact statement, which the Planning Board unanimously accepted, provided written responses to public comments on traffic, water supply, sewer disposal, site lighting, economic impacts, fiscal impacts, planning and zoning, wetlands and storm water runoff. At the conclusion of the SEQRA review process, the Planning Board issued a findings statement, wherein it made detailed findings relating to land use and zoning, fiscal impacts and related project benefits, storm water and wetlands, geology, traffic impact, utilities and drainage, aesthetic resources and visual impacts, noise, community services, air quality, cultural resources, vegetation and wildlife, and secondary and cumulative impacts. Beyond question, the Planning Board took the requisite hard look and made a reasoned elaboration of the basis for its findings (*see Matter of Reed v Village of Philmont Planning Bd., supra* at 1036-1037; *Matter of Oates v Village of Watkins Glen,* 290 AD2d 758, 762 [2002]), and its SEQRA determination will not be disturbed.

Mercure, J.P., Peters and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.