■ In the Matter of WILLIAM J. CADE, Appellant, v ROBERT STAPF, as Chairperson of the Planning Board of the Town of New Scotland, et al., Respondents, et al., Respondent. [937 NYS2d 673]—

Rose, J.

We turn first to the threshold issue of standing, and petitioner's contention that Supreme Court erred by narrowly limiting his standing to challenge the Planning Board's determinations. Supreme Court found that petitioner demonstrated an injury-in-fact within the zone of interest sought to be protected by SEQRA so as to have standing to challenge the Planning Board's SEQRA determination based on the proximity of his property to the project and his view of the proposed water tower located 400 feet from his house (*see Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773-774 [1991]; *Matter of Ziemba v City of Troy*, 37 AD3d 68, 70-71 [2006], *lv denied* 8 NY3d 806 [2007]; *Matter of Steele v Town of Salem Planning Bd.*, 200 AD2d 870 [1994], *lv denied* 83 NY2d 757 [1994]). Despite that finding, however, Supreme Court concluded that petitioner lacked standing to raise the specific issue of whether the Planning Board adequately considered the impact of the water tower on the more distant view from the Helderberg Escarpment. Supreme Court also concluded that petitioner did not have standing to claim that the Planning Board's approval of the project was in violation of the applicable Town ordinance.

As for petitioner's standing to challenge the SEQRA review, we are persuaded by his argument that Supreme Court's ruling that he has standing—regardless of its specific basis—gives him a significant interest in having all of the mandates of SEQRA enforced. Petitioner's challenge to the Planning Board's SEQRA determination encompasses the issue of whether the Planning Board "identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of

the basis for its determination" (*Matter of Jackson v New York State Urban Dev. Corp.*, 67 NY2d 400, 417 [1986]; *see Matter of West Beekmantown Neighborhood Assn., Inc. v Zoning Bd. of Appeals of Town of Beekmantown*, 53 AD3d 954, 956 [2008]). Thus, petitioner's challenge, in our view, properly includes his contention that the Planning Board was required to take a hard look at all of the relevant and identified concerns regarding the visual impact of the project, and not just the view from his own home (*see Matter of Mombaccus Excavating, Inc. v Town of Rochester, N.Y.*, 89 AD3d 1209, 1210 n [2011]).

We also agree with petitioner that he has standing to challenge the Planning Board's approval of the cluster subdivision application. In this regard, there is no dispute that petitioner has sufficiently established an injury based on his close proximity to the subdivision and, in our view, his injury is within the zone of interest protected by the Town ordinance governing the cluster subdivision approval process (*see Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead*, 69 NY2d 406, 413-414 [1987]; *Matter of Wittenberg Sportsmen's Club, Inc. v Town of Woodstock Planning Bd.*, 16 AD3d 991, 992-993 [2005]). Contrary to petitioner's contention, however, the Planning Board complied with the relevant ordinance by conditioning final approval of the cluster subdivision on the Town Board's approval of the management and ownership of the resultant open space. Inasmuch as the Town Board's authority to approve the open space maintenance plan was in no way infringed upon, we decline to disturb the Planning Board's conditional approval (*see* Code of the Town of New Scotland § 190-61 [F]; *Matter of Hickey v Planning Bd. of Town of Kent*, 173 AD2d 1086, 1088 [1991]).

Nor are we persuaded that the Planning Board's failure to identify and include the ZBA as an involved agency in the SEQRA review process was fatal to that process here. The Town Board initially served as the lead agency and the original application proposed a community water supply system utilizing a ground-level storage tank. There was no water tower in the proposal and no indication that any aspect of the project would require a variance from the ZBA. Accordingly, the Town Board engaged in due diligence in identifying all involved agencies and putting them on notice (*see* 6 NYCRR 617.6 [b] [3] [iii]), and the Planning Board had no need to repeat that procedural step when it succeeded the Town Board as lead agency (*see Matter of Heritage Co. of Massena v Belanger*, 191 AD2d 790, 792 [1993]). When the need for a variance eventually became apparent, the Planning Board fully considered the impact of the height of the

water tower and, in our view, the failure to include the ZBA as an involved agency under these circumstances was inconsequential for purposes of the Planning Board's SEQRA review (*see Matter of Scenic Hudson v Town of Fishkill Town Bd.*, 266 AD2d 462, 464 [1999], *lv denied* 94 NY2d 761 [2000]; *Matter of King v County of Monroe*, 255 AD2d 1003, 1004 [1998], *lv denied* 93 NY2d 801 [1999]). Furthermore, because the water tower was included in the Planning Board's full SEQRA review, the review was not impermissibly segmented (*see Matter of Scenic Hudson v Town of Fishkill Town Bd.*, 266 AD2d at 464). Accordingly, we find no procedural error requiring reversal.

Turning to the substance of petitioner's SEQRA claims, we find no merit to his contention that the Planning Board failed to consider the visual impact of the water tower, its growth inducing impact or alternatives to it. The record reveals a full SEQRA review of a long form environmental assessment form, a draft environmental impact statement, a final environmental impact statement, engineering and planning reports, simulated digital photographs of the project, input from other interested agencies and several public hearings. With respect to the water tower's impact on the viewshed, the Planning Board, in addition to reviewing the reports and simulations, required a number of steps designed to mitigate the visual impact, including preserving the existing vegetation, painting the tank a neutral color to minimize contrast and building the tower into the hillside. The review process included consideration of the capacity of the water system designed to serve the development, with any excess capacity available for potential consolidation with the existing water district. The record also reveals that alternatives to a water tower were considered in consultation with engineers, who ultimately concluded that the tower was needed to meet the requirements for domestic use and fire protection. In sum, the record amply supports the conclusion that the Planning Board made a reasoned elaboration of its findings after properly identifying and taking a hard look at the relevant environmental concerns (*see Matter of Mirabile v City of Saratoga Springs*, 67 AD3d 1178, 1181 [2009]; *Matter of Reed v Village of Philmont Planning Bd.*, 34 AD3d 1034, 1036 [2006], *lv denied* 8 NY3d 807 [2007]; *Matter of Oates v Village of Watkins Glen*, 290 AD2d 758, 762 [2002]).

Mercure, A.P.J., Peters, Lahtinen and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.